STATE ex rel. OKLA. STATE BD. OF MEDICAL LICENSURE AND SUPERVISION v. RIVERO

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:STATE ex rel. OKLA. STATE BD. OF MEDICAL LICENSURE AND SUPERVISION v. RIVERO

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

STATE ex rel. OKLA. STATE BD. OF MEDICAL LICENSURE AND SUPERVISION v. RIVERO2021 OK 31Case Number: 118033Decided: 06/02/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 31, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

STATE OF OKLAHOMA, ex rel. OKLAHOMA STATE BOARD OF MEDICAL LICENSURE AND SUPERVISION, Plaintiff/Appellee,
v.
DENNIS RIVERO, M.D., LICENSE NO. MD 25366, Defendant/Appellant,
and
BRAD STAHLHEBER, D.O., Appellee.

APPEAL FROM THE OKLAHOMA STATE BOARD OF
MEDICAL LICENSURE AND SUPERVISION

¶0 A physician's professional conduct was examined by the Board of Medical Licensure and Supervision. During the disciplinary proceeding a stipulated protective order was entered by the Board. The professional complaint against the physician was dismissed, and approximately two years later the physician requested the Board modify its protective order to allow the physician to use three documents in a different legal proceeding. The Board refused, and the physician appealed. We retained the appeal. We hold: (1) The stipulated blanket protective order making all documents in the administrative proceeding subject to the order and prohibiting their use in any other legal proceeding is contrary to the public policy expressed by the Oklahoma Open Records Act and the Oklahoma Discovery Code; and (2) The physician's claim seeking access to the initial report of misconduct is not properly before the Court.

ORDER OF THE OKLAHOMA STATE BOARD OF MEDICAL LICENSURE
AND SUPERVISION REVERSED; AND REMANDED WITH DIRECTIONS

Michael F. Smith, Melissa D. Revell, McAfee & Taft, Tulsa, Oklahoma, for Defendant/Appellant, Dennis Rivero, M.D.

Niki Batt, Vice Deputy Attorney General, Thomas R. Schneider, Assistant Attorney General, Oklahoma Office of the Attorney General, Oklahoma City, Oklahoma, for Plaintiff/Appellee, State of Oklahoma, ex rel., the Oklahoma State Bd. of Medical Licensure and Supervision.1

EDMONDSON, J.:

¶1 This is an appeal from the Oklahoma State Board of Medical Licensure and Supervision (State Board or Board) and its order denying a motion filed by a physician, Dr. Rivero, to allow him to use three documents from his prior disciplinary proceeding in a different legal proceeding. The reason for the denial was the Board had entered a blanket protective discovery order in the disciplinary proceeding. We conclude the protective order making "all documents" in the administrative proceeding subject to the order and prohibiting their use in any other legal proceeding is contrary to the public policy expressed by the Oklahoma Open Records Act and the Oklahoma Discovery Code. The order of the Board denying Dr. Rivero's motion to modify the protective order is reversed and the controversy remanded for additional proceedings as directed herein. We also conclude Dr. Rivero's assignments of error relating to his failure to obtain a copy of the initial report of misconduct are not before the Court in this appeal.

I. The Controversy

¶2 The controversy before us involves two proceedings before the State Board. The first proceeding was brought to discipline a physician, Dr. Rivero, and the proceeding was dismissed with prejudice and without imposition of professional discipline. The second occurred two years later when Dr. Rivero sought to obtain records from the first proceeding by filing a motion to modify a previous protective discovery order in his disciplinary proceeding. He was unsuccessful in obtaining the records and brought the present appeal challenging the order which denied his motion to modify.

¶3 Dr. Rivero's appellate brief provides an explanation for the first proceeding before the State Board: (1) A surgery site was incorrectly prepped by the surgery team before Dr. Rivero was called to the operating room; (2) Shortly after Dr. Rivero made an incision, he determined that the wrong ankle had been prepped; (3) He reversed course and closed the incision, appropriately documented the error, disclosed it to the patient, and continued to care for the patient post-operatively; (4) He referred the patient to another physician to perform the surgery on the appropriate ankle; (5) The patient has had no problems on the ankle related to the wrong site incision; and (6) The initial report to the State Board "about this particular incident is based on nothing but rank hearsay."

¶4 An initial report of professional misconduct was made against Dr. Rivero to the State Board in January 2014. This report was used with additional information from other sources to support a Verified Complaint filed in February 2016 against Dr. Rivero before the State Board. The complaint raised allegations related to the wrong-site surgery.

¶5 The State Board provided to Dr. Rivero's counsel the Board's preliminary witness and exhibit list for the disciplinary hearing. Five witnesses were listed by their name and occupation. Two additional witnesses were listed by three initials with one designated as a patient. The Board's final witness list had three witnesses, (1) the Board's investigator, (2) the defendant, and (3) "any defense witness." The person who allegedly made the initial report to the State Board was not specifically listed as a witness. The initial report made to the State Board was not listed as an exhibit. However, Dr. Rivero's final witness and exhibit list had the name "Brad Stahlheber, D.O.," and his expected testimony described as: "All facts and circumstances regarding the allegations made against Dr. Rivero and the complaint he submitted."

¶6 An Assistant Attorney General representing the State before the Board filed a motion for a "Stipulated Protective Order" to be entered by the Board Secretary "so that parties may exchange confidential and legally protected information in the discovery process." A Stipulated Protective Order was filed in the proceeding. The order states in part: "It has been agreed by the parties to the Proceeding, through their respective counsel, that to expedite the flow of discovery material and to preserve the confidentiality of certain documents and information, a protective order should be entered by the Board." The scope of the protective order included: "all documents, the information contained therein, and all other information produced or disclosed during the Proceeding whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party, including any non-party, in this Proceeding (the 'Supplying Party') to any other party, including any non-party (the 'Receiving Party'), when the same is designated with the procedures set forth herein [in this Order]." The order was signed by an Assistant Attorney General, the State Board's Secretary, and counsel for Dr. Rivero.

¶7 According to the abbreviated Minutes of the Board's meeting in September 2016 which are filed herein, the Board denied Dr. Rivero's motion for summary judgment, and then two witnesses provided sworn testimony, J. Lane, an investigator for the Board, and Dr. Rivero, the defendant.2 The Minutes state one of the members of the Board moved to dismiss the case, and the members of the Board agreed by unanimous affirmative vote.

¶8 An order of dismissal with prejudice was filed by the Board on November 10, 2016. The Board concluded the State had failed to prove its allegations against Dr. Rivero, and the formal Complaint should be dismissed. No professional discipline was imposed and the proceedings for the purpose of discipline were concluded.

¶9 Dr. Rivero commenced an action in the District Court of Tulsa County in August 2018, and sought damages from the person who allegedly made the January 2014 report to the State Board concerning Dr. Rivero's conduct. Dr. Rivero alleged the report to the State Board was made by Dr. Stahlheber and that the report was not made in good faith.

¶10 The trial judge in the District Court action granted Dr. Rivero's motion to compel the State Board to provide to him the disciplinary investigation file on Dr. Rivero. The Board sought extraordinary relief in this Court to prevent enforcement of the trial court's order. A stay order was issued by this Court temporarily preventing enforcement of the District Court's discovery order, and the extraordinary relief proceeding is pending in this Court.3

¶11 In September 2018, counsel for Dr. Rivero sent letters to the Board and stated requests pursuant to the Oklahoma Open Records Act (ORA), 51 O.S.2011 §§ 24A.1--24A.32 (as amended) related to Dr. Rivero's previous disciplinary proceedings. In February 2019, another counsel from the same law firm made another Open Records Act request. An Oklahoma Assistant Attorney General responded in February 2019, and stated the Board had previously "produced all requested materials which were filed/entered into the record before the Board during the individual proceeding" but the Board would not produce "the requested subpoenas for Dr. Stahlber and Jana Lane due to the standing protective order in place and Okla. Admin. Code §§ 435:1-1-3(F); 435:3-3-2; and 51 O.S. § 24A.12." The response states that Lane's deposition was marked "confidential," but not the deposition of Stahlheber. The response states additional material was attached in response to the February 2019 request for documents and some of the requested documents, e.g., certain requested unspecified policies did not exist and could not be supplied.4 Dr. Rivero's counsel responded and made an additional Open Records Act request. The request also sought copies of requests made by three additional law firms during the time between September 2016 - June 2017, as well as the responses made by the Board. Dr. Rivero's attorney then made additional requests for documents in February 2019 and March 2019.

¶12 In February 2019, Dr. Rivero also filed a motion with the Oklahoma State Board of Medical Licensure and Supervision and sought relief from the stipulated protective order issued in his disciplinary proceeding. The title of this motion included the phrase "Open Records Rejection."5 Dr. Rivero sought an order of the Board "dissolving or modifying the protective order "so that evidence exhibits, depositions, and pleadings from Dr. Rivero's disciplinary hearing may be used in related litigation in Tulsa County District Court." He stated that he sought "information contained in the Board hearing pleadings, exhibits, and depositions."

¶13 Dr. Rivero's motion stated the initial report of misconduct to the Board was made by Dr. Stahlheber. Dr. Rivero argued the report was false and reckless. He argued the pre-hearing depositions with their exhibits were public and not confidential, "subject only to the confidentiality of protected patient health information." He focused on depositions given by the Board's investigator, Ms. J. Lane, and another by Dr. Stahlheber. These two depositions were taken by counsel for Dr. Rivero during the disciplinary proceedings to be used by Dr. Rivero for defending the allegation of professional misconduct. He sought to remove from the scope of the protective order a motion for summary judgment with attached exhibits he filed in his disciplinary proceeding. This motion did not specifically request a copy of the initial report of misconduct made against Dr. Rivero.

¶14 The Board heard Dr. Rivero's motion to modify at its meeting on March 7, 2019. The Board's order denying Dr. Rivero's motion was filed May 9, 2019, with a certificate of mailing for May 10, 2019. One of the findings of fact made by the Board identified the documents Dr. Rivero sought as "relief from the Stipulated Protective Order:" (1) "Deposition Transcript of J. Lane, (2) Deposition Transcript of B. Stahlheber, and (3) Dr. Rivero's Motion for Summary Judgment and exhibits attached thereto."6 The order denying relief does not specifically mention the initial report as a requested item by Dr. Rivero.

¶15 Dr. Rivero appealed the order of the Board. This Court sua sponte retained Dr. Rivero's appeal for appellate adjudication.

II. Initial Report of Misconduct Raised on Appeal

¶16 Dr. Rivero argues he must be given a copy of the initial report of alleged professional misconduct filed with the Board in January 2014. None of his arguments relating to obtaining a copy of the initial report of professional misconduct are cognizable in this appeal for the relief he seeks.

¶17 Dr. Rivero's appellate brief-in-chief states the initial report of alleged misconduct to the Board was not a privileged communication, and is now subject to full disclosure pursuant to the Open Records Act, 51 O.S.2011 §§ 24A.1--24A.32 (as amended). He also relies on 76 O.S.2011§ 26,7 a statute codified in the 1987 Professional Review Bodies--Protection From Liability Act.8 He argues the initial report "does not have a constitutional privilege protecting it from disclosure." He makes several additional arguments relating to the initial report. Various arguments are made by the Board asserting the initial report of professional misconduct is confidential.

¶18 Dr. Rivero's brief-in-chief and reply brief also raise constitutional claims relating to the initial report of misconduct. His reply brief argues the Board's order violates his "constitutional right to the courts," and "due process," and the Court should "allow Dr. Rivero access to the materials utilized in the Medical Board proceeding, including Dr. Stahlheber's initial report to the Medical Board and any other communications between the Medical Board and Dr. Stahlheber." This language echoes the final proposition in his brief-in-chief which states the Board's failure to give Dr. Rivero the initial report of misconduct violates Okla. Const. Art. 2 § 6 and his right of access to the courts.9

¶19 Dr. Rivero cites no court opinion as authority supporting his view of Art. 2 § 6 in either his brief-in-chief or his reply brief. He cites no statute in either brief when citing and discussing Art. 2 § 6. His brief-in-chief does reference "the peer review statute," and appears to reference 76 O.S. § 26 which was previously identified as "the peer review statute." The titles of propositions in the briefs do not specifically invoke Okla. Const. Art. 2 § 6, but instead state Dr. Rivero has been deprived of "his due process rights," a principle which appears in Okla. Const. Art. 2 § 7.10 He states the Board's order denying relief from the protective order "prejudiced Dr. Rivero in his ability to move forward in the District Court action."

III. Initial Report of Misconduct, Administrative Record, and Scope of Appellate Review

¶20 The State Board of Medical Licensure and Supervision is statutorily granted quasi-judicial powers while sitting as a Board for the purpose of revoking, suspending or imposing other disciplinary actions upon the license of physicians or surgeons of this state.11 This exercise of quasi-judicial power by the Board used to adjudicate a motion to modify in a disciplinary proceeding did not include a request by Dr. Rivero to obtain the initial report of professional misconduct, and Dr. Rivero's failure to obtain a copy of this report cannot be subject to a first-instance judicial examination in an administrative appeal brought pursuant to 59 O.S. § 513.

¶21 The order challenged in the appeal contains the following finding of fact describing the documents Dr. Rivero sought by his motion to modify.

5. Counsel for Dr. Rivero now seeks relief from the Stipulated Protective Order for three specific items: (1) Deposition Transcript of J. Lane, (2) Deposition Transcript of B. Stahlheber, and (3) Dr. Rivero's Motion for Summary Judgment and exhibits attached thereto.

The initial report of alleged misconduct was not included in this list of documents. Dr. Rivero does not challenge this express finding of fact in this appeal, or discuss whether the initial report of misconduct was within the scope of the Board's protective discovery order or otherwise properly subject to the Board's cognizance when adjudicating the motion to modify in Dr. Rivero's proceeding.

¶22 Dr. Rivero's motion to modify did mention an initial report of alleged misconduct on the first two pages of the motion.12 He stated: (1) the report "does not meet the requirements of the peer review privilege," and (2) facts relating to the report. He did not expressly state he was seeking relief from the Board's protective order for the purpose of obtaining the initial report. No numbered proposition in his motion specifically identified the initial report as a subject for analysis. The motion to modify did contain specific propositions specifically dedicated for the Board to modify the protective order for Dr. Rivero's request to obtain his motion for summary judgment and two depositions.

¶23 The initial report of alleged misconduct is in the custody and possession of the Board. However, the initial report of alleged misconduct was not filed in the Board's record as part of the disciplinary proceeding brought against Dr. Rivero by the Board. His motion to modify did not show a specific request for obtaining the initial report by modifying the protective discovery order.

¶24 A hearing was held March 7, 2019, on the motion to modify. An electronic copy of the Board's hearing was filed as part of the record on appeal. The electronic copy is not filed in the appellate record as a sealed electronic document. However, a printed transcript of this same hearing was filed with this Court in double-sealed envelopes as part of the designated record on appeal,13 with the label "attorney work product" on the face of the outer envelope as well as the face of the transcript. The Board has authority to keep patient records confidential when presented at a hearing,14 but this issue was not discussed at the hearing and no patient records appear as part of the transcript of the hearing. We have reviewed the printed transcript as an aid for the Court's exercise of appellate review as authorized by 75 O.S. 2011 § 309(G),15 and resealed the transcript within its two envelopes and returned it to the appellate record without adjudicating the effect of the Board's designation of "attorney work product" on the face of the transcript.

¶25 The transcript of the hearing shows Dr. Rivero's counsel stating the following.

This hearing concerns whether or not the stipulated protected order entered in Dr. Rivero's case applies to three specific pieces of information that we seek to use in district court litigation in Tulsa. The first is a deposition of Jana Lane . . .

The second piece of evidence that we seek relief from the protective order is the deposition of Dr. Brad Stahlheber . . . .

The third piece of evidence is actually Dr. Rivero's motion for summary judgment.

O.R. at 430, Transcript of hearing, at 5-7, material omitted.

The transcript does not show a request at the hearing for obtaining the initial report of misconduct by modifying the protective order or otherwise.

¶26 The absence of Dr. Rivero seeking the initial report as an administrative remedy within the individual proceeding prevents him from seeking it as an appellate remedy, although he has argued for such based upon two constitutional provisions and the application of statutes. In District Court actions at law, equity, and statutory proceedings, a court adjudicates a legal claim which was properly presented by pleadings and evidence submitted by the parties for the court's adjudication.16 Generally, the subject matter jurisdiction of a court or a tribunal's adjudicatory authority is invoked by a document filed with the court or tribunal, when the document shows that the court or tribunal has power to proceed in a case of the character presented, or power to grant the relief sought.17 The legal effect of the document is based upon its substance and not its form or title.18 Although a District Court is a court of unlimited original jurisdiction,19 a few instances do exist where a party's filed document and request for adjudication may be beyond the particular exercise of jurisdiction in the circumstances.20

¶27 Similarly, an administrative agency adjudicates legal rights in an individual proceeding, and the issues adjudicated are formed by (1) the documents filed by the parties and (2) the evidence produced for consideration,21 in circumstances where the quasi-judicial adjudication is supported by administrative authority expressly or by necessary implication conferred by the Constitution or statutes of Oklahoma.22 Similar to an adjudication in a District Court, pleadings and evidence making the request for an administrative adjudication may be beyond the agency's exercise of authority or power in the particular individual proceeding.23

¶28 Const. Art. 7 § 1 confers on administrative agencies only that quantum of quasi-judicial power which is necessary to support their exercise of adjudicative authority in individual proceedings brought before them.24 Because: (1) This exercise of an adjudicative statutory administrative power by a statutory agency in an individual proceeding must comply with both procedure and substance required by the Oklahoma Constitution even when not invoked by a party;25 and (2) Statutes authorizing this administrative power are construed by public officials26 consistent with all provisions of the Oklahoma Constitution;27 then (3) Many types of claims raising a constitutional issue for the first time in an appeal from an administrative order could have been framed as a statutory issue in the administrative proceeding prior to the appeal. For example, a party in an administrative proceeding may use pleadings and evidence to frame an issue challenging an agency's actions based upon the agency's improper or unreasonable application, interpretation, or construction of valid statutory authority in a given circumstance,28 as opposed to an allegation a statutory agency is enforcing a facially unconstitutional statute or a facially void order.29 Dr. Rivero makes no claim of facial invalidity of a statute or that the Board's order is void.

¶29 Of course, a constitutional issue may be exempted from the exhaustion-of-remedies doctrine, and a constitutional issue may be raised for the first time by a party in either an appeal from an administrative order or in an original jurisdiction proceeding in a District Court in the proper circumstances.30 Generally, the remedial relief which is sought based upon the constitutional right (issue) must have been raised previously before the administrative tribunal, unless the remedy is not legislatively required to be exhausted, or the administrative remedy is deemed ineffective for a variety of cognizable reasons, such as when the particular relief sought is beyond the administrative agency's power to remedy, but the remedial relief is deemed to be within the original jurisdiction of a District Court.31

¶30 Exempting a constitutional issue from exhaustion is itself subject to exceptions. For examples, we have mentioned a party's ability to frame the constitutional challenge as a statutory issue in the context of an as-applied constitutional challenge instead of a facial challenge to a statute or a facially void order. Further, while an exemption for requiring exhaustion may occur when the exhaustion is a prudential rule in the circumstances, a party will be required to pursue the exhaustion of a particular remedy when such is a mandatory statutory requirement. 32

¶31 A more fundamental issue arises when a party does not address exhaustion of a remedy, which is a mode of procedure, to obtain the sought relief, as opposed to asserting a constitutional right (or constitutional issue) which a party seeks to have adjudicated within a particular procedure or remedy.33 For example, this issue may arise when a party does not distinguish between the scope of potential remedial relief available in (1) an appeal from an administrative order issued in an individual proceeding, and (2) the unlimited original jurisdiction of a District Court.34 An appeal is a continuation of the same case, proceeding, or controversy presented in the inferior tribunal,35 and an administrative appeal brings before the appellate tribunal the administrative record36 where the issues adjudicated on appeal are confined to those properly at issue upon the administrative record.37 For example, in 1988 we explained the exemption from the prudential exhaustion-of-remedies doctrine was based upon the "presence of constitutional questions" which must be "coupled with a sufficient showing of the inadequacy of the administrative process or remedy," and a "threatened or impending irreparable injury flowing from the delay" using the administrative process.38 This showing must be based upon facts appearing in the administrative record before us combined with a legal argument.

¶32 Dr. Rivero has an adversarial burden relating to the type of constitutional claim he makes. He must show the alleged constitutional right to obtain the initial misconduct report is a claim which he may raise for the first time on an administrative appeal because his claim is incompatible with an adequate administrative remedy to obtain the report by initially invoking the Board's administrative authority to apply, interpret, and construe statutory authority. In other words, Dr. Rivero's claim for an appellate remedy which compels the Board to produce a document must be based upon him showing either: (1) He raised before the Board within the scope of the individual proceeding the Board's duties, express or necessarily implied, to obtain the initial report as administrative remedial relief by means of the Board construing statutes consistent with constitutional provisions, and thus preserving the issue for our appellate review by an assignment of error; or (2) He failed to raise a request relating to the initial report in the individual proceeding because of the inadequacy of an administrative remedy before the Board for his type of constitutional claim, and he is entitled to a form of first-instance appellate relief. He has made neither showing in this appeal. These alternative burdens are consistent with both the prudential failure-to-exhaust doctrine and our explanation a party must have asked for the same relief before the lower tribunal as sought on appeal, and preserve an allegation of error when the relief was not granted.39 This principle is consistent with a rule recognizing a burden to present facts, claims and legal arguments falls on the party who asserts an entitlement to the judicial relief sought.40

¶33 A similar expression of this principle states parties must preserve error in the lower tribunal with proper argument and authority, or the error is waived when raised for the first time on appeal.41 Dr. Rivero's brief states he has a "due process" right. A due-process exception to the principle of preserving error for an appeal does not apply herein for two reasons. The first is Dr. Rivero's lack of invoking administrative adjudicative jurisdiction for the purpose of obtaining a copy of the initial misconduct report or explaining why such could not have been invoked, as discussed herein. The second reason is the nature of his appellate argument raising due process.

¶ 34 An assignment of error, whether in a petition in error or in an appellate brief, must state the error "clearly so that the court and opposing parties may ascertain the issues raised."42 Substantial compliance with this principle is sufficient, and mere technical and formal defects are disregarded.43 When a party's appellate analysis fails to distinguish between procedural and substantive due process, or rely upon correct authority for the issue presented, the Court may address a party's argument when the Court can ascertain the exact due process issue being raised by the party.44

¶35 We cannot determine the nature of Dr. Rivero's due process claim as it pertains to the order he challenges on appeal and the initial report of misconduct. The Due Process section of the Oklahoma Constitution, Art. 2 § 7, has a procedural due process element, a substantive due process element, an anti-discrimination element, and we have explained section 7 provides "a bundle of rights." 45 We cannot determine if he is invoking the Due Process section of the Oklahoma Constitution or the Federal Constitution as neither his administrative motion nor appellate brief expressly identifies the provision. We cannot determine which element is being raised, although we note he states: "Restricting the depositions, pleadings, and exhibits placed before the Board and/or discussed in argument to the Board would be grossly unfair and would violate Dr. Rivero's rights to due process of law . . . and prevent an otherwise fair trial in the District Court."46 This argument before the Board relates to three documents he sought from the administrative record and not the initial report of misconduct. We agree the Board's order must be reversed as to these three documents on non-constitutional grounds as explained herein, and we need not address the constitutional argument as to the three documents he actually sought before the Board.47

¶36 His appellate brief references "due process rights in the District Court Action." He states "this Court should reverse the Medical Board's Order Denying Motion for Relief and remand with instructions to Medical Board to grant Dr. Rivero the relief he requested so he may continue to prosecute the District Court Action in accordance with his due process rights." Again, this order of the Board did not adjudicate any claim or right of Dr. Rivero relating to the initial report of misconduct.

¶37 Dr. Rivero did not request or seek as an administrative remedy a copy of the initial report of misconduct as a remedy within the adjudicatory discretion of the Board when the Board issued its order and adjudicated his motion to modify. He apparently did previously request a copy from the Board pursuant to a request based upon the Open Records Act. The usual Open Records Act judicial remedy is a civil suit for declarative or injunctive relief in a District Court when a record is not provided as requested.48 Dr. Rivero's appellate discussion of the initial report of misconduct is an invitation for this Court to engage in a first-instance adjudication of his asserted right to obtain and use the report, but he makes this request in the context of this Court exercising appellate jurisdiction. This Court does not make first instance determinations of disputed non-jurisdictional law issues.49

¶38 No authority is cited herein by Dr. Rivero for the Board possessing adjudicatory jurisdiction for its own response to an Open Records Act request when exercising disciplinary authority.50 The Board was not presented with this issue, and he did not request the initial misconduct report as part of his motion to modify. Dr. Rivero's assignments of error on appeal relating to his failure to obtain a copy of the initial report of misconduct are not before the Court for appellate review of the Board's order.

IV. Standard of Review, Motion for Summary Judgment, and Two Depositions:
The Hearing and Board's Reliance on O.A.C. 75:1-5-6 and 435:3-3-13(a)(1) & (5).

¶39 Dr. Rivero's appellate brief-in-chief agrees in a general sense that the standard of review herein is based on the Oklahoma Administrative Procedures Act (OAPA).51 The OAPA references an appeal of a final agency order to this Court, and also references the application of additional provisions of the OAPA.52

B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.

75 O.S.2011 § 318(B)(1). One statute referenced is 75 O.S.2011 § 322, which contains the following language relevant to a standard of review on appeal.

(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act [75 O.S. § 310], including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.
(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.
(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

75 O.S.2011 § 322. We review Dr. Rivero's assignments of error using the parameters of section 322.

¶40 He raises both issues of fact and law. An adjudicated issue of fact is reviewed to determine if (1) the record contains substantial evidence in support of the facts upon which the decision is based, and (2) the agency's finding was entered in excess of its statutory authority or jurisdiction, was arbitrary or capricious, or was clearly erroneous in view of the reliable, material, probative and substantial competent evidence.53

¶41 Dr. Rivero also raises issues of law. An appellate standard of review is based upon factors such as the nature of (1) the proceeding in the lower tribunal, (2) the tribunal's decision, (3) the procedure used in the lower tribunal, and (4) the judicial or quasi-judicial discretion reviewed on appeal.54 Generally, an administrative agency's legal rulings are subject to a court's plenary, independent and non-deferential reexamination using a de novo standard.55 Where the facts are not disputed, this Court must determine if the agency's order was free of legal error. 56

¶42 When applying a standard of review, great weight is accorded the expertise of an administrative agency and a presumption of validity attaches to the exercise of this expertise in the subject-matter the agency supervises.57 The Board does not supervise the administration of the Oklahoma Open Records Act as a matter of legislatively-recognized agency expertise. The interpretation to be given to a statute is a question of law, subject to our plenary, independent and non-deferential examination applying a de novo standard of review.58 We use this standard when examining statutory references made by the parties, such as those relating to the Open Records Act.

¶43 Dr. Rivero filed a motion for summary judgment with attached exhibits in his disciplinary proceeding.59 This motion and exhibits appear as part of the record on appeal herein. Dr. Rivero wants to use this motion for summary judgment, with patient information therein redacted, in a District Court proceeding. The motion was not filed under seal or marked as confidential when filed with the Board.

¶44 At the hearing, Dr. Rivero's counsel argued the protective order itself specified a procedure for making documents confidential, and the requirements of the protective order had not been followed. He also argued he paid for the two depositions, the depositions and motion for summary judgment were created after the official complaint had been filed, and the documents were part of an "open record" discussed at an "open meeting." He argued the documents were not part of the Board's investigation, the language of the order was too broad for the purpose of the order stated therein, and its provisions were contrary to the Open Records Act. The information in the documents was discussed at a public hearing. He stated: "I don't think there's a confidential thing in any of these documents aside from perhaps a patient name or two that could be redacted." He argued the protective order states the Board may modify or lift the order at a date after completion of the disciplinary procedure.

¶45 Discussion by the Board focused on two issues, whether Dr. Rivero voluntarily agreed to the protective order when it was entered and the authority of the Board to make a protective order. An attorney present at the hearing and designated by the Board's Minutes as the Board Advisor questioned counsel for Dr. Rivero. The transcript contains the following.

Board Advisor: This -- what has been presented is a stipulated protective order.

Counsel for Dr. R. Yes, sir.

Board Advisor: Dr. Rivero, it may not have been you all, but had competent counsel representing him when he was before this board; is that correct?

Counsel for Dr. R. That's correct.

Board Advisor: And that competent counsel agreed with counsel for the State to this protective order and the -- and -- Just a moment -- and the words contained therein, Would you agree with me?

Counsel for Dr. R. Yes sir.

Board Advisor: All right. So whether it's broad, overbroad, whatever, the lawyers for the parties agreed to the protective order, and based upon that agreement, Dr. Stought [the Board Secretary] signed it on behalf of the board. Is that what we are looking at?

Counsel for Dr. R. That's - - most of what we're looking at . . . .

Board Advisor: Well, as a matter of fact, on the four corners of the document, it was approved as to form by Dr. Rivero's counsel.

Counsel for Dr. R. Correct. I don't dispute that.

The Board Advisor then questioned counsel for Dr. Rivero concerning the pending litigation in the District Court of Tulsa County, and part of that discussion contains the following.

Board Advisor: Right, And isn't that - - In other words, why can't the district judge, in his or her wisdom, why can't - - since they have the whole case before them anyway, make the decision on whether they want to address dissolving, modifying, or otherwise dealing with this protective order?

Counsel for Dr. R. Well, that's a question, . . . you're gonna have to ask opposing counsel because I suggested the Court could, District Court could look at the protective order and decide what was designated or not designated [as confidential], but it still seems to me that you've got provisions in here that suggest only this Board can affect it.

¶46 Counsel for the State objected to any modification of the protective order. He was asked to explain his objection. He stated: (1) it was important for the Board to understand the authority for issuing the protective order, (2) Dr. Rivero's voluntary acceptance of the order when entered, (3) Dr. Rivero's access to his own motion for summary judgment and the two depositions for use in other court proceedings "would dissuade people to come forward with information," and (4) "it would certainly dissuade us to agree to enter into an order if we are now to understand that it can unilaterally be lifted without our agreement." The authority for the Stipulated Protective Order he relied on as important authority for the Board was not a statute, or a provision of the Oklahoma Administrative Code adopted by the Board, but O.A.C. 75:1-5-6, a provision adopted by the Attorney General.

¶47 Counsel for Dr. Stahlheber appeared at the hearing and argued "only the Board [and not a District Court] can lift the order." He argued "all documents and other materials produced in this proceeding shall be used only for the purposes of this proceeding" "whether or not a supplying party designates such documents or material as, quote, confidential, period." Tr. 26-27. The Board then went into executive session, returned, and Dr. Rivero's motion to modify was denied.

¶48 The Board adopted the State's argument that the Board had power to create the Stipulated Protective Order pursuant to O.A.C. 75:1-5-6. The face of the Stipulated Protective Order contains no reference or citation to O.A.C. 75:1-5-6. The Stipulated Protective Order states: "This Order is made pursuant to Okla. Admin. Code § 435:3-3-13(a)(1),(5),"60 a provision adopted by the Board. The order before us on appeal which denied Dr. Rivero's motion expands on the authority for the previous stipulated order and states: "12. The Stipulated Protective Order was entered pursuant to Okla. Admin. Code § 435:3-3-13(a)(1),(5); Okla. Admin. Code § 75:1-5-6." This statement is made as a conclusion of law by the Board.

¶49 Title 75 of the Oklahoma Administrative Code, created by the Attorney General, contains Chapter 1, Administration, and this contains four subchapters numbered 1, 3, 5 and 7.61 Chapter 1, Subchapter 5, where O.A.C. 75:1-5-6 is codified, contains seventeen (17) provisions.62 Because the Board adopted the argument of the State and made a conclusion of law stating the Board could exercise authority pursuant to Okla. Admin. Code 75:1-5-6 and create the Stipulated Protective Order, we examine this authority to explain the Board's conclusion on this point is clearly erroneous. We give this rule, like all rules, a reasonable construction based upon the plain meaning appearing on the face of the rule with its unambiguous language.63

¶50 The first provision of Chapter 1, Subchapter 5, is 75-1-5-1, "Individual Proceedings," states that a provision of the OAPA "governs individual proceedings by Office of the Attorney General for revocation, denial, suspension and non-renewal of certification or for reprimand of certified facilities."64 (Emphasis added). These individual proceedings involving "certified facilities" are not individual proceedings involving an exercise of discretion by the Board pursuant to 59 O.S. § 513. The second provision involves the Attorney General bringing an individual proceeding "against any program certified by the Attorney General for violation of Title 74 O.S § 18p-1 et seq."65 Again, this provision does not involve the disciplinary jurisdiction of the Board pursuant to section 513. The third provision provides for types of sanctions in the individual proceedings involving "certified facilities", i.e., "revocation of certification," "reduction in certification," "suspension of certification," and "reprimand."66 Again, the provision does not apply to the Board.

¶51 The fourth provision, 75:1-5-4, provides a procedure for a petition and notice for an individual proceeding. For our purposes it is sufficient to note that the provision begins with language "In the event the Attorney General determines action should be taken, an individual proceeding may be initiated pursuant to the APA by filing a petition...." (Emphasis added). This language refers to an exercise of discretion by the Attorney General, and not an exercise of discretion by the Oklahoma State Board of Medical Licensure and Supervision. The fifth provision, 75:1-5-5, provides for "service of petition and notice" in these individual proceedings initiated by an exercise of discretion of the Attorney General. The Board has its own provisions for notice, O.A.C. 435:3-3-5, "Notices," and 435:3-3-6, "Service of notice," and its own discretion to exercise pursuant to 59 O.S. § 513.

¶52 The sixth provision, 75-1-5-5.1 (Emergency actions) refers to "emergency action or summary suspension of a certification" based upon a finding by the Attorney General or a hearing officer, and it clearly does not apply to the discretion exercised by the Oklahoma State Board of Medical Licensure and Supervision. The seventh provision, 75-1-5-5.2, provides for procedures in individual proceedings, and the Board has its own procedures in O.A.C. 435, Chapter 3 (Individual Proceedings), Subchapter 3 (Investigations and Hearings).

¶53 The eighth provision, 75-1-5-5.3, "Prehearing Conference" states "a pre-hearing conference may be ordered and scheduled by the Attorney General or a hearing officer, and the Attorney General may authorize the conference to occur by teleconference." This is not a rule which supplants the authority of the Board to order and schedule conferences. The ninth provision, 75-1-5-5.4, "Continuances," gives authority to the Attorney General to "continue or adjourn the proceedings at any time for a specified time." Again this does not supplant the authority of the Board of Medical Licensure and Supervision when scheduling its own proceedings. Similarly, the tenth provision, 75-1-5-5.5, "Discovery," authorizes the Attorney General to "enter specific orders directing the conduct of discovery" and does not supplant the authority of the Board.

¶54 The eleventh provision, 75-1-5-6, "Protective Orders,"67 is the provision explained by the Assistant A.G. to the Board, and also cited by the Board in its order denying Dr. Rivero his requested relief. This provision authorizes the Attorney General to "make such orders relating to discovery," and it provides for non-disclosure of "client Identification." This provision also states the Attorney General may "make appropriate orders, including dismissal of a proceeding or denial of relief, as may be warranted for failure or refusal to comply with an order issued pursuant to this rule." This provision referring to the actions of the Attorney General in making orders and protecting "client identification" clearly does not apply to Dr. Rivero's proceeding before the Board. The additional provisions in Chapter 1, Subchapter 5, also clearly do not apply to the Board and its exercise of disciplinary jurisdiction and discretion.68

¶55 The Board also relied on Okla. Admin. Code § 435:3-3-13(a)(1) & (5) as authority for the Stipulated Protective Order. This language in the Code states as follows.

435:3-3-13. Trial examiner.

(a) The Board or the Board Secretary may direct that the Board utilize a Trial Examiner to hear matters specified by the Secretary or as authorized by this Chapter. Generally, where the Trial Examiner is requested, the duties of the Trial Examiner in an individual proceeding shall be:
(1) to hear and rule upon pretrial discovery disputes . . .
(5) to hear and rule on other preliminary motions.

Okla. Admin. Code § 435:3-3-13(a)(1) & (5). This provision of the Code gives authority to the Board to rule on pretrial discovery disputes and preliminary motions, but does not specifically address making discovery confidential.

¶56 The Board has three provisions relating to confidentiality and public access which were referenced in the proceeding: O.A.C. 435:1-1-3 (d)(e)(f) & (g), "Method of operations," O.A.C. 435:3-3-2, "Confidentiality during investigations," and O.A.C. 435:3-3-3, "Confidentiality during hearings." The provisions state as follows.

Method of operations . . .

(d) The Board shall hold meetings in accordance with the Oklahoma Open Meetings Act. Special meetings may be called by the President and Secretary of the Board. Five (5) members of the Board constitute a quorum and may transact any business or hold any hearing by simple majority vote of a quorum.

(e) All rules and other written statements of policy or interpretations formulated, adopted or used by the Board in the discharge of its functions and all final orders, decisions, and opinions will be made available for public inspection during regular office hours at the Board's central office or branch office(s) when electronically feasible.

(f) All records of the Board which are public records pursuant to the Oklahoma Open Records Act shall be available for public review and copying during regular business hours at the Board's central office or branch office(s) when electronically feasible. Copies shall be available only upon appropriate arrangements for payment of applicable fees. Records of the Board which are subject to a permissive or mandatory privilege of confidentiality shall not be released to the public; provided that the Secretary of the Board or the Executive Director of the Board may, upon request, allow records subject to a permissive privilege of confidentiality to be open for public review and copying. It is the policy of the Board to maintain as confidential all patient records held by the Board in any file, pursuant to 12 O.S. § 2503, to every extent possible under law. It is the position and determination of the Board that investigative files of the Board are confidential under the Open Records Act.

(g) In the event the Board convenes a meeting by teleconference, the Board shall provide adequate space for any person to listen and view the meeting via appropriate audio and video equipment.

O.A.C. 435:1-1-3 (d)(e)(f) & (g).

Confidentiality during investigations.

During the conduct of any investigation, the investigative staff shall take all proper and necessary action to ensure the confidentiality of investigative files, in accordance with the Oklahoma Open Records Act, 51 O.S.1991, §§ 24a.1 et seq. In particular, staff shall take all necessary action to ensure patient files obtained by the agency during an investigation shall not be disclosed to the public. The investigative staff shall emend all copies of patient records used during an investigation to delete, redact, black-out or otherwise render unreadable the name and other identification information of a patient, unless that information is pertinent to the hearing and reasonable efforts have been made by the Staff to secure the cooperation of the patient or the patient's parent or guardian.

O.A.C. 435:3-3-2.

Confidentiality during hearings.

During a hearing before the Board or presentation of a witness before the Trial Examiner, patient records necessary for use in the hearing shall be so marked as to ensure the confidentiality of the patient where disclosure of the patient's identity is not pertinent to the hearing. In addition, a witness who is or was a patient of a physician before the Board may assume a pseudonym to protect the patient's identity. No patient shall be required to identify himself or herself. In the event of a minor patient, a parent or guardian shall be inquired of as to identification of the minor.

O.A.C. 435:3-3-3.

The first provision recognizes public records of the Board are available for the public's review but this does not include confidential investigative files. The second provision relates to investigation, "patient files," and the confidentiality of investigative files "in accordance with the Oklahoma Open Records Act, 51 O.S.1991, §§ 24a.1 et seq." The third provision relates to a hearing before the Board and patient records, patient identity, and a patient witness.

¶57 The Board's rules relate confidentiality of files to "investigative files" in accordance to the Open Records Act. One section of this Act, 51 O.S.Supp.2017 § 24.5, states in part as follows.

All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours; provided:

1. The Oklahoma Open Records Act, Sections 24A.1 through 24A.30 of this title, does not apply to records specifically required by law to be kept confidential . . . .

This provision specifically states the Open Record Act does not make a record available for public inspection and copying when the record is "specifically required by law to be confidential."

¶58 The legislature has specified that reports of all disciplinary action taken by the Board as specified in a particular statute will be available for public inspection, and also "investigative files" are confidential.

Reports of all disciplinary action provided for in this section will be available to the public upon request. Investigative files shall remain confidential.

59 O.S.Supp.2019 § 509.1(D). In its appellate brief, the Board relies upon this statutory language and O.A.C. 435:1-1-3(f) with references contained therein to investigative files. The sentence in section 509.1(D): "Investigative files shall remain confidential," was added to the statute by an amendment effective November 1, 2019.69 Dr. Rivero's motion seeking relief was filed in February 2019, the hearing on the motion was held in March 2019, the Board's order was both filed and mailed to Dr. Rivero in May of 2019, and all of these events occurred several months prior to the effective date of the amendment.

¶59 Section 509.1 is titled "disciplinary actions" and provides for the types of discipline the Board imposes,70 and we have previously addressed the non-retroactivity of substantive professional ethical standards in the context of attorney discipline.71 We have also examined an amendment to the Open Records Act to determine if language either expressly or impliedly created a retroactive effect, and upon finding none we declined to apply the statutory amendment retroactively.72 Both sides to this dispute cite and rely upon the application of the section 509.1 statutory amendment with differing results, and neither discuss statutory retroactivity for section 509.1. But we need not determine if the statute may be applied retroactively to Dr. Rivero's motion because (1) an administrative rule has the force and effect of law,73 (2) the confidentiality of "investigative files" appears in both O.A.C. 435:1-1-3 and O.A.C. 435:3-3-2, and they were both in effect when the motion to modify was filed,74 (3) rule-based confidentiality of investigative files was raised by the parties, and (4) application of the rules is sufficient to address the assignment of error raised by the parties concerning investigative files.

¶60 The Board's appellate brief does not define an "investigative file," but one of its arguments indicates documents are in the investigative file when the documents were not filed as "a part of the trial record" in the individual proceeding. This reasoning is used to assert confidentiality of the two deposition transcripts. The Board also asserts it is seeking "to protect the confidentiality of the initial complaint and the complaint process."

¶61 Dr. Rivero's motion for summary judgment receives a different treatment by the Board in its appellate brief for justifying the Board's denial of Dr. Rivero's motion to modify: silence. The Board makes a general assertion no error occurred in denying the motion to modify. Its silence on appeal as to the motion for summary judgment appears to indicate a motion for summary judgment by Dr. Rivero is confidential solely because the Stipulated Protective Order makes "all documents" subject to the scope of the order. The Board objects to its view of Dr. Rivero's approach: "Dr. Rivero's argument [is] that the entire Medical Board file including the investigative file, must be turned over subject to the Open Records Act." The Board's language recognizes at least two distinct types of files, the investigative file and the "Medical Board file," and also another location of documents which are found in the "trial record," which we construe to mean the documents filed on the Board's administrative docket or record. The Board does not specifically address the category of "litigation file" and how these different types of files relate to documents filed on an administrative docket for an individual proceeding.

¶ 62 The Board's appellate brief discusses the Stipulated Protective Order and cites Okla. Admin. Code 435:1-1-10(a)(2)75 and O.A.C. 435:3-3-13(a)(5)76 as authority for the order.77 These pertain to the authority of the Board and its Secretary to address what are essentially pretrial or preliminary matters in an individual proceeding. This authority does not address the extent of the Board's (or Secretary's) discretion in creating confidential records before the Board by an agreement of parties which is adopted by the Board for both the Board's disciplinary enforcement and to prevent use of documents and information in other legal proceedings. The Board concludes its appellate argument with the assertion the Board's action is "reasonable for any court, tribunal, or professional hearing board sitting in a judicial capacity. As was the case with the Board members, to enforce the terms of an agreement reached by the parties and which it has approved."

¶63 Dr. Rivero takes a different approach and champions a combined purpose and time-of-creation definition for a document appearing in an "investigative file." He argues documents are public, non-confidential, and subject to discovery when the documents are created on a date after the sworn complaint is filed with the Board by the Board's Secretary. He also discusses the purpose a document is created, e.g., created for the Board's investigation prior to the Board's sworn complaint or some other purpose. Dr. Rivero has additional arguments seeking disclosure for documents created prior to the date of the official sworn complaint. But they relate to the initial report of misconduct and not the two deposition transcripts or his motion for summary judgment which are before us in this appeal.

V. Appellate Resolution of the Controversy
A. Introduction and Public Policy

¶64 This appellate controversy is not about the Board protecting patient confidentiality, nor is it about the inviolable confidential nature of the Board's investigatory documents in an investigation file as it relates to access by the subject of the investigation. This controversy concerns: (1) the Board using a pre-trial agreement by the parties to make records confidential and remove them from public access, (2) the Board authorizing an agreement to keep records from being used in other legal proceedings, and (3) the nature of quasi-judicial discretion vested in the Board in a disciplinary proceeding to interpret and modify these agreements consistent with Oklahoma public policy after conclusion of the disciplinary proceeding in which they were created.

¶65 An initial report of professional misconduct received by the Board is investigated. When "formal disciplinary action" is not warranted, the Board, through its Secretary, may issue a "letter of concern" to a physician, and this letter "shall remain in the confidential investigative file of the physician to whom the letter is issued."78 An individual proceeding for the purpose of professional discipline is "initiated by the filing of a sworn complaint with the Secretary of the Board."79 This complaint contains "a brief statement setting forth the allegations which are the basis of the complaint and naming the person against whom the complaint is made," and includes notice and hearing requirements of the Oklahoma Administrative Procedures Act.80 The initial report of misconduct, sometimes also labeled a "complaint," which was filed prior to and initiated the investigatory response by the Board, is distinct from the official sworn Secretary's Complaint which commences the individual proceeding for the purpose of discipline.81

¶66 Rule-based confidentiality of a record is tied to the concept of an "investigative file" and to application of the Open Records Act, 51 O.S.2011 § 24A.20, which states a public record is not made confidential by merely using the record for "investigatory purposes" or placing the record in an "investigation file." While investigatory documents are documents created for an investigatory purpose, an investigatory purpose by a public body for a particular document is not sufficient, by itself, to create confidentiality for that document. 51 O.S.2011 § 24A.20. One reading of this requirement is simple: A document created for the purpose of an investigation, and not otherwise a public record, and placed in the Board's investigative file, is a confidential document.

¶67 Dr. Rivero's motion for summary judgment was filed on August 18, 2016. The Stipulated Protective Order was filed August 22, 2016. The motion for summary judgment was not filed for the purpose of the Board's investigation, but as part of an individual proceeding of the Board exercising statutory disciplinary jurisdiction. In 2002 we explained the State Board of Medical Licensure and Supervision was subject to the provisions of the OAPA.82 The OAPA specifies what must be contained in the record of an individual proceeding.

F. The record in an individual proceeding shall include:

1. All pleadings, motions and intermediate rulings;
2. Evidence received or considered at the individual proceeding;
3. A statement of matters officially noticed;
4. Questions and offers of proof, objections, and rulings thereon;
5. Proposed findings and exceptions;
6. Any decision, opinion, or report by the officer presiding at the hearing; and
7. All other evidence or data submitted to the hearing examiner or administrative head in connection with their consideration of the case provided all parties have had access to such evidence.

75 O.S.2011 § 309(F).

Motions filed in the individual proceeding are expressly listed as part of the administrative record, 75 O.S.2011 § 309(F)(1), i.e., "[a]ll pleadings, motions and intermediate rulings."

¶68 Dr. Rivero's motion for summary judgment is a motion within the meaning of this provision. The Board's appellate brief recognizes its own response to Dr. Rivero's motion for summary judgment as a public administrative record it did not file under seal and states the Board "waived confidentiality" for the Response. The Board's appellate brief is silent on the status of Dr. Rivero's motion for summary judgment, a document also not filed under seal but according to the Board remains within the scope of the protective order. Dr. Rivero characterizes his motion for summary judgment as a motion filed on an administrative record or docket, but with the potential of containing confidential information, such as a patient record. This view is not unique in Oklahoma administrative disciplinary practice.83

¶69 The Board recognizes its disciplinary hearings are public, the presentations by parties at these public hearings may include motions for summary judgment, and such motions may be based upon, at least in part, confidential patient records. The Board has a rule for preserving confidentiality of patient records during a hearing, O.A.C. 435:3-3-3, supra. Attorneys in our State possess the skill necessary to file motions for summary judgment in disciplinary proceedings on the Board's administrative docket without revealing confidential information in the motion by filing separate documents under seal with confidential information necessary to support of the motion.

¶70 The Stipulated Protective Order expressly authorizes a motion seeking relief from the protective order after the final order in the proceeding. The protective order states in part as follows.

e. Upon final resolution of this litigation (including conclusion of any appeal), this Order shall remain in effect and continue to be binding, unless expressly modified, superseded, or terminated by consent of all parties or by Order of the Board. This Board expressly retains jurisdiction over this action for enforcement of the provisions of this Order.
f. This Order shall not prevent a party from applying to the Board for relief therefrom, or from applying to the Board for further or additional protective orders, or from agreeing to modifications of this Order, subject to the approval of the Board.
g. The Board may amend, modify, or dissolve this Protective Order at any time.

O.R. 113-127, 124, Stipulated Protective Order, Aug. 22, 2016. The language in the order expressly states the Board has authority to enforce, amend, modify, or dissolve the Stipulated Protective Order, i.e., authority to exercise of quasi-judicial discretion in a disciplinary proceeding. This quasi-judicial discretion in the order is ultimately based upon (1) a statutory grant of disciplinary authority to the Board, (2) a statutory and rule-granted power to the Board to decide pre-trial discovery disputes in the context of an administrative individual proceeding, and (3) the statutory and rule-granted power including a power to remove from public viewing certain documents filed on the administrative docket, or information contained in those filed documents.

¶71 One consequence of recognizing these sources of authority is simply this: the quasi-judicial discretion to enforce, amend, modify, or dissolve the Stipulated Protective Order has limits. The exercise of judicial or quasi-judicial adjudicatory discretion by a judge or administrative board does not mean that the decision is one without fixed principles by which its correctness may be determined upon appellate review.84 The power to exercise discretion and grant an order adjudicating a discovery dispute is not a grant of power to abuse that adjudicatory discretion, and the exercise of the power may not be contrary to substantive legal authority.85 The Board's exercise of discretion and application of law in denying the motion to modify is reviewed consistent with 75 O.S.2011 § 322 and as we explain herein, subject to legislatively defined public policy.

¶72 The findings of the Board are that Dr. Rivero agreed to the protective order, was represented by counsel, and as an additional finding the following statement in the order.

8. Under Section 1(e) of the Stipulated Protective Order, "all documents and other materials produced in this proceeding shall be used only for purposes of this proceeding whether or not a Supplying Party designates such documents or materials as "Confidential". Stipulated Protective Order, Pg. 2.

O.R. 427- 429, 428, Order Denying Motion for Relief From Protective Order and Open Records Rejection (May 9, 2019). The Board's reasoning was that Dr. Rivero agreed to the protective order, was represented by counsel, and the order states all documents produced in the proceeding cannot be used for another purpose. The Stipulated Protective Order contains no limits on the nature of, or reasons for, a party's request when the party seeks to modify the order and invokes the Board's quasi-judicial discretion. The construction by the Board would limit a party's motion to modify any provision in the order to the sole question whether the party agreed to the order and was represented by counsel, and if so, then no modification may occur. The same agreement by Dr. Rivero to not use documents in other proceedings is the very same agreement recognizing his right to request a modification of that limiting provision.

¶73 Dr. Rivero's motion to modify quoted this specific language in his motion, and argued it was "internally inconsistent" with another provision in the order as applied to the documents he requested. The Stipulated Protective Order states the following.

The restrictions set forth in this Order shall not apply to documents or information designated Confidential that are publicly available or that are obtained independently and under rightful means by the Receiving party, unless they became so due to a violation of this Order.

O.R. 113-127, 122-123, Stipulated Protective Order, August 22, 2016.

Dr. Rivero argued the motion for summary judgment he filed was not for the purpose of the Board's investigation at any time, the motion was filed after the formal sworn complaint, the motion was an open record on the Board's administrative docket, and the motion was discussed in an open meeting before the Board.

¶74 The first confidentiality issue is whether the document, the motion for summary judgment, was created for the purpose of the Board's investigation at any time. The motion for summary judgment was not created for the Board's investigation, and the rule-based confidentiality for a investigative file is not applicable. The next issue is whether the motion for summary judgment was confidential, and if not confidential is the motion for summary judgment otherwise prohibited from Dr. Rivero's access and use in another proceeding.

¶75 Generally, the burden is on the public agency seeking to deny access to show a record should not be made available when responding to an open records request.86 But the exercise of discretion being challenged herein is not that used when responding to an open records request. The discretion being challenged is the Board's discretion in making a document private when it is used to adjudicate a quasi-judicial disciplinary proceeding. But the privacy interests recognized in the discovery process, as stated in the order before us, patient information, or information related to financial information, health and medical information, or information required to be confidential as a matter of law, are consistent with the privacy interests used for the balancing test in the Open Records Act.

¶76 When a court record is turned into a confidential record, an agreement by parties to request confidentiality as to a public court record is not without statutory limits due to the Open Records Act.87 These limits include a court utilizing the least restrictive means for achieving confidentiality, and making the scope of confidentiality narrowly tailored so that only the portions of the record subject to confidentiality are sealed and the remainder of the record is kept open. These requirements reflect a public policy set by our Legislature that the exercise of judicial power should be within the public view unless confidentiality is required by law, or a compelling privacy interest outweighs the public's interest and the confidentiality is narrowly applied. We have recognized a strong public policy allowing access to public records which includes records used by courts to adjudicate legal controversies.88

¶77 An administrative disciplinary process has the potential of possessing confidential attributes in various parts of the process, such as the investigative phase and the deliberative phase (executive session) of a public individual proceeding,89 and confidentiality is also properly asserted by various people at various times, such as medical patients. If an administrative body exercises quasi-judicial power to create confidentiality of a public record by mere agreement of the parties, then public policy concerns as to these quasi-judicial records is raised similar to the public policy concerns addressed in the Open Records Act and Discovery Code for the exercise of judicial power. An agreement by parties may not transgress public policy as defined by our legislature, and when the issue is free from doubt the transgression will not be judicially enforced.90

¶78 The Board's order asserts "all documents," whether confidential or not, will essentially be treated as confidential by prohibiting their use in any other legal action or proceeding. It also expands the prohibited uses of confidential information: "In no event shall such information be used for any business: competitive, personal, private, public or other purpose." The stipulated order also facially restricts the parties' use of the public administrative record made in the individual proceeding on the administrative docket of the Board.

Counsel shall be entitled to retain copies of pleadings, affidavits, motions, briefs, other papers filed with the Board, deposition transcripts, and the trial record (including exhibits) even if such materials contain Confidential Information, so long as such materials are clearly marked to reflect they contain information subject to this Order and may not be used in connection with any other proceeding or action.

O.R. 113-127, 122, Stipulated Protective Order, August 22, 2016. In one sense, the parties appear to be trying to limit the creation of a public record and "public access" by using a well-known procedure described as a blanket or umbrella protective discovery order, specifically in this case, a blanket stipulated protective discovery order.

¶79 The Board has adopted for its individual proceedings the Oklahoma Discovery Code by its rule stating parties "shall be allowed to use discovery available in a civil action in the District Courts of Oklahoma."91 The Oklahoma Discovery Code, 12 O.S.2001 § 3224--3237,92 provides procedures for the protection of confidential information during the discovery process, and a protective order pursuant 12 O.S.Supp.2017 § 3226(C) is one method.93 Our Discovery Code in 12 O.S. 2011 § 3229(2) allows parties to create a stipulation which may "[m]odify other procedures governing or limitations placed upon discovery."94 Sections 3226 and 3229 have their conceptual origins in their counterparts found in the Federal Rules of Civil Procedure, Rule 26 and Rule 29.

V. Appellate Resolution of the Controversy
B. The Protective Order and Public Policy

¶80 As noted by the Tenth Circuit thirty years ago, blanket stipulated protective discovery orders were used to designate all materials produced in discovery as confidential, and "allow the parties to make full disclosure in discovery without fear of public access."95 For some federal courts, an "umbrella" or "blanket-type" Rule 26 protective discovery order is an order more likely to be modified at a later date, one reason being such an order is considered to be less likely to elicit a party's reliance, "because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition."96 One court has stated Second Circuit opinions reveal four factors when determining reasonable reliance on a protective order: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order."97 A Rule 29(b)98 stipulated protective order may receive a slightly different treatment, and the order remains subject to modification when required to further a public policy,99 and for some courts a good cause requirement for entering the order needs more than a mere facial stipulation.100 One court has stated the Tenth Circuit requires a showing of "reasonable need" by a party to modify a protective order.101 This same court stated a number of factors may be used when deciding whether to modify a protective order, and such factors include: "the reason and purpose for a modification, whether a party has alternative means available to acquire the information, the type of protective order which is at issue, and the type of materials or documents which are sought."102 In some federal courts, a blanket protective order extending broad protection to all documents produced without a showing of good cause for confidentiality as to specific documents "may be useful in expediting the flow of pretrial discovery materials," but "they are by nature overinclusive and are, therefore, peculiarly subject to later modification."103

¶81 This purpose of a blanket protective order to expedite the flow of documents raises an additional issue not discussed by the parties, the timing of the protective order issued by the Board in relation to when the three documents sought by Dr. Rivero were produced, and a party's reasonable reliance on a protective order at the time of the production. For example, one court has stated: "Although rule 26(c) is silent on when the movant must file for a protective order, the Tenth Circuit has held that 'a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production.'"104 This timing of the protective order relates to a party's reliance upon the order at the time of the production. For example, a protective order is for a purpose to encourage the full disclosure of evidence not yet disclosed, and a retroactive attempt to modify a protective order must take into consideration the order may have caused a witness to rely upon the protection provided by the order at the time the witness provided essential testimony.105 The record before us shows the filing of the summary judgment motion prior to the Board's protective order. The appellate index of record appears to show Lane's deposition taken prior to the protective order and Stahlheber's deposition taken a few days after the order. No party has argued in this appeal that a party or witness could reasonably rely on a blanket protective order when the depositions and motion for summary judgment were created or produced.

¶82 A blanket protective order is not favored when it removes from a court its oversight making a determination of confidentiality and attempts to shift that discretion to a unilateral determination by one or more parties. For example, one court refused to approve a proposed protective order when it lacked specificity, made only bare allegations of harm, allowed the parties to determine the confidentiality of unspecified documents without any showing of specific injury that would result from disclosure, and allowed the parties "unilateral control over what may be kept from public view, reserving to themselves the ability to declare anything confidential."106 The court also listed seven additional factors deemed important in the Third Circuit: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.107

¶83 The Board focused on Dr. Rivero's previous agreement to the protective order, but did not examine whether: (1) The individual documents sought by Dr. Rivero contained material which satisfied the original stated purpose for the protective order, such as financial information or health and medical information; or (2) If the absence of such information in the three documents made the protective order overinclusive as to these documents; or (3) If the three documents could be redacted to remove statements required by law to be confidential, or (4) If the scope of the protective order making confidential "sensitive information which the party making the production deems confidential" was an overinclusive and impermissible limitation on the Board's exercise of its discretion consistent with the Discovery Code due to the order purporting to grant to parties a unilateral discretion to create confidentiality as to any or all documents in the proceeding; or (5) The degree to which other individuals could reasonably rely on a blanket protective discovery order without future modification, as to these three documents redacted or not, when considering the individual nature and purpose of these three documents for the original disciplinary proceeding.

¶84 One of Dr. Rivero's arguments asserting Open Records Act access-to-administrative-quasi-judicial documents filed on an administrative record has some similarities to one based upon a First Amendment right to judicial documents which has been championed by some,108 but we need not address this issue. None of the parties address various standards used for modifying protective discovery orders in federal courts, nor do they address potential standards in Oklahoma state courts for modifying a protective discovery order when the subject of the order involves administrative records and the order is created pursuant to provisions in the Oklahoma Discovery Code.

¶85 One issue which frequently arises when discussing the nature of judicial discretion used when modifying or enforcing a stipulated protective order is whether a stipulated protective order is considered a hybrid contract-order, i.e., a contract for purposes of interpretation and an order for purposes of enforcement.109 In light of the absence of parties' discussion on this issue, and our directions on remand for the Board to implement proper discretion for a protective discovery order by fulfilling both (1) the purpose stated on the face of the stipulated protective order and (2) the partes' agreement, although with our appellate-required remedial process of redaction, we need not address this issue.

¶86 The specific claim made by Dr. Rivero which is sufficient for reversal of the Board's order denying his motion to modify is simply this: First, a District Court must implement the public policy legislatively expressed in the Open Records Act as to public documents when that court exercises adjudicative judicial power in a cause of action where the Oklahoma Discovery Code applies. Second, the Board must implement that same public policy when the Board exercises an adjudicative quasi-judicial power as to documents the Administrative Procedures Act requires to be made part of the statutory record for a disciplinary individual proceeding because this Board is subject to the Open Records Act and has adopted the Oklahoma Discovery Code.

¶87 In other words, the Open Records Act and Oklahoma Discovery Code work together to create a limitation upon the exercise of quasi-judicial discretion by the Board in an individual proceeding when the Board attempts to use a protective order to remove documents or information from the official record. Of course, confidentiality of documents and information may occur in both forums, judicial and quasi-judicial, but the confidentiality must be created consistent with public policy expressed by both the Open Records Act and the Oklahoma Discovery Code.

¶88 The 2011 version of 59 O.S. § 509.1(D)(2) stated: "Reports of all disciplinary action provided for in this section will be available to the public upon request." The 2019 amendment added: "Investigative files shall remain confidential." The records of the disciplinary individual proceeding lie in between the Board's confidential investigation phase and the "disciplinary action" which is expressly made public. In our case, the Board has used an order it issued, although with the parties' agreement, as authority to create confidential documents and information. But the Board has also previously adopted the Oklahoma Discovery Code which has requirements for making documents and information confidential. The language in the Board's rule states in part: "parties . . . shall be allowed to use discovery available in a civil action in the District Courts of Oklahoma." This use of the normally construed mandatory "shall" and the often construed permissive "allowed" raises the issue whether a protective order issued by the Board is required to comply with the Discovery Code the Board has previously adopted for individual proceedings.

¶89 We have recognized the important part our Discovery Code plays in promoting the ascertainment of truth and ultimate disposition of a legal proceeding.110 The individual disciplinary proceeding before this Board adjudicates the potential loss of a professional license, reputation, livelihood, and a constitutionally protected property interest111 which results in a decision with the potential for a preclusive effect as to other legal proceedings.112 In the context of a District Court's protective order involving the adjudication of legal rights in a judicial proceeding and removal of a record from the public's view, our legislature has required the simultaneous use of the Discovery Code and the Open Records Act. A similar requirement for an administrative board in a quasi-judicial proceeding adjudicating legal rights will provide a uniform procedure for implementing the public policy expressed by the Discovery Code and the Open Records Act.113

¶90 The Open Records Act states "[a]ny order of the court for removal of materials from the public record shall require compliance with the provisions of paragraphs 2 through 7 of subsection C of Section 3226 of Title 12 of the Oklahoma Statutes."114 Section 3226 states a protective order removing documents from the public record should contain certain elements, including identification of the specific material to be removed.115 The order here is titled "Stipulated Protective Order" by agreement of the parties, and appears tantamount to a 12 O.S. § 3229 blanket protective order. The order states "certain documents and information have been or may be sought, produced or exhibited . . . and that some of these documents relate to the parties . . . which the party making the production deems confidential." (Emphasis added.) The scope of the order states it includes "all documents," and they are not specifically identified. We agree with Dr. Rivero that the stipulated protective order states a particular purpose, but its language reaches out to ensnare documents which are not within the order's purpose. The first page of the protective order states the purpose of the order.

The parties have informed the Board that certain documents and information have been and may be sought, produced or exhibited by and between the parties in this proceeding (the "Proceeding") and that some of these documents relate to the parties' and non-parties' financial information, health and medical information, or other types of sensitive information which the party making the production deems confidential.

O.R. at 113. The order refers to what the parties deem confidential. In a different provision of the order "all documents" are subject to the scope of the protective order. The view that parties may exclusively control which documents appear on a face of a public record, while simultaneously using those documents to obtain a judicial determination of legal rights is one which has been criticized by different members of this Court.116 We agree with Dr. Rivero that the scope of the stipulated protective order is too broad and is contrary to the public policy set forth in the Oklahoma Discovery Code and Open Records Act for removing documents from public view when those same documents are filed with the Board to be used for an adjudication of legal interests.

VI. Summary and Remand

¶91 The stipulated protective order making "all documents" in the administrative proceeding as subject to the order and prohibiting their use in any other legal proceeding is contrary to public policy expressed in the Oklahoma Open Records Act and the Oklahoma Discovery Code. The order of the Board denying Dr. Rivero's motion to modify the protective order is reversed and the controversy is remanded for additional proceedings as directed. Dr. Rivero's claim seeking access to the initial report of misconduct is not properly before the Court.

¶92 When we exercise appellate review to determine whether a trial court abused its discretion, the review is based upon an actual antecedent exercise of that judicial discretion by the trial court.117 There is nothing in the record to show that the Board exercised any quasi-judicial discretion to determine if the motion for summary judgment or the two transcripts related to financial information, health and medical information, or a type of sensitive information which could support a claim for confidentiality required by law.

¶93 In response to the Board requesting parts of the administrative record be filed under seal in the appellate record, we granted the request as to certain documents but not Dr. Rivero's motion for summary judgment. The motion for summary judgment was not originally filed under seal before the Board. The motion was not marked confidential. None of the exhibits attached to the motion were marked as confidential. The motion for summary judgment addressed the Board's allegation of professional misconduct and not access to investigation documents or investigation files. The exhibits contained letters of support for Dr. Rivero, letters with additional information, and a photograph. Although the motion for summary judgment was denied by the Board, Dr. Rivero seeks to use the motion and its exhibits with any patient information redacted. The Board agrees this motion was filed on the administrative docket of the Board.

¶94 The Board also comments in its brief the depositions were in the custody of the Board but not filed. Dr. Rivero asserts they are part of a "record." We note that a deposition was not treated as open to the public at common law,118 and an exhibit's status as part of a trial court record is not the same as whether that exhibit is part of the evidence in a case.119 The Open Records Act contains a specific provision concerning court records, 51 O.S.Supp.2014 § 24A.30, and defines a record subject to the Open Records Act with reference to "records" as defined by 12 O.S.2011 § 32.1.120 Section 32.1 specifically excludes "evidence" from the definition of a "record."121 The parties do not discuss a deposition as an exhibit, or an evidentiary court record, or exclusion of an exhibit from a District Court judgment roll, or how these principles relate to depositions in an administrative proceeding. Due to our disposition allowing the protective order to be modified, we need not address claims relating to the nature of access to depositions in an administrative proceeding.

¶95 Dr. Rivero seeks to modify the protective order as to three documents, the motion for summary judgment and two depositions. We have kept the depositions sealed during appellate review. Upon remand: (1) Dr. Rivero shall file a proper application with the Board and identify: the extent to which any of the three documents contain patient information, or information related to financial information, health and medical information, or information required to be confidential as a matter of law, and should be redacted to that extent. Upon remand: (2) the Board shall act on Dr. Rivero's application, exercise its quasi-judicial adjudicatory jurisdiction in the disciplinary proceeding, and modify the stipulated order to allow Dr. Rivero access to use the particular properly redacted document in other proceedings. All other relief sought by Dr. Rivero herein is denied.

¶96 The order of the Board is reversed and the controversy remanded to the Board with directions.

¶97 CONCUR: DARBY, C.J.; WINCHESTER, EDMONDSON, COMBS, GURICH, and ROWE, JJ.

¶98 CONCUR IN RESULT: KANE, V.C.J.; and KAUGER, J.

FOOTNOTES

1 Various Asst. Attys. Gen. appeared before the Board and in these proceedings, and references herein to filings made with the Board, or arguments made at a hearing before the Board, by one or more Asst. Attys. Gen. do not include counsel appearing herein.

2 O.R. 535-538, 538 ("Oklahoma State Medical Board of Licensure & Supervision," "Minutes" Sept. 22, 2016).

3 State of Oklahoma, ex rel. Oklahoma State Board of Medical Licensure and Supervision v. Hon. Daman Cantrell and Dennis Rivero, M.D., Okla. Sup. Ct. No. 119,231 (Jan. 19, 2021, Order staying effect of District Court's order compelling production).

4 O.R. at 437-438 (email of Assist. A.G. response to Open Records Request).

5 O.R. 273-311 ("Defendant's Motion for Relief from Protective Order and Open Records Rejection with Incorporated Authorities," Feb. 20, 2019), O.R. 312-314 ("Dr. Rivero's Expedited Application to Set Motion for Relief from Protective and Open Records Rejection Hearing," Feb. 20, 2019).

6 O.R. 427- 429, 428, Order Denying Motion for Relief From Protective Order and Open Records Rejection (May 9, 2019).

7 76 O.S.2011 § 26: "Any person who supplies information in good faith and with reasonable belief that such information is true to a professional review body shall not be liable in any way in damages with respect to giving such information to the professional review body."

8 76 O.S.2011 §§ 24-29.

9 Okla. Const. Art. 2 § 6: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

10 Okla. Const. Art. 2 § 7: "No person shall be deprived of life, liberty, or property, without due process of law." No supporting authority is cited for a due process argument.

11 59 O.S.2011 § 513(A)(1): "The State Board of Medical Licensure and Supervision is hereby given quasi-judicial powers while sitting as a Board for the purpose of revoking, suspending or imposing other disciplinary actions upon the license of physicians or surgeons of this state, and appeals from its decisions shall be taken to the Supreme Court of this state within thirty (30) days of the date that a copy of the decision is mailed to the appellant, as shown by the certificate of mailing attached to the decision." The same language appears in 59 O.S.Supp.2019 § 513(A)(1).

12 O.R. 273-311, 273-274, Defendant's Motion for Relief from Protective Order and Open Records Rejection with Incorporated Authorities, Feb. 20, 2019.

13 O.R. at 430, Audio Transcription: Dennis Rivero Motion in Front of Board, March 7, 2019.

14 O.A.C. 435:3-3-3: Confidentiality during hearings.

"During a hearing before the Board or presentation of a witness before the Trial Examiner, patient records necessary for use in the hearing shall be so marked as to ensure the confidentiality of the patient where disclosure of the patient's identity is not pertinent to the hearing. In addition, a witness who is or was a patient of a physician before the Board may assume a pseudonym to protect the patient's identity. No patient shall be required to identify himself or herself. In the event of a minor patient, a parent or guardian shall be inquired of as to identification of the minor."

15 75 O.S.2011 § 309(G):

G. Oral proceedings shall be electronically recorded. Such recordings shall be maintained for such time so as to protect the record through judicial review. Copies of the recordings shall be provided by the agency at the request of any party to the proceeding. Costs of transcription of the recordings shall be borne by the party requesting the transcription. For judicial review, electronic recordings of an individual proceeding, as certified by the agency, may be submitted to the reviewing court by the agency as part of the record of the proceedings under review without transcription unless otherwise required to be transcribed by the reviewing court. In such case, the expense of transcriptions shall be taxed and assessed against the nonprevailing party. Parties to any proceeding may have the proceedings transcribed by a court reporter at their own expense.

16 In re Guardianship of Stanfield, 2012 OK 8, n. 52 & ¶ 24, 276 P.3d 989, 1001 (a judgment outside the scope of the issues presented for adjudication by the trial court is of no force and effect, or coram non judice, and void at least insofar as it goes beyond the issues properly presented), citing Union Oil Co. of Calif. v. Brown, 1981 OK 112, 641 P.2d 1106, 1108; Shawareb v. SSM Health Care of Oklahoma, Inc., 2020 OK 92, ¶ 29, 480 P.3d 894, 905 (a framework of orderly procedure which provides for notice and opportunity for a party to put in issue legal claims for adjudication is part of fundamental fairness).

17 Dutton v. City of Midwest City, 2015 OK 51, ¶ 16, 353 P.3d 532, 539. See, e.g., Krosmico v. Pettit, 1998 OK 90, ¶ 23, 968 P.2d 345, 351 ("the pleadings invoked the equitable cognizance of the trial court").

18 In re Estate of Dicksion, 2011 OK 96, 286 P.3d 283, 287 ("The legal effect of any court filed paper depends on its substance rather than its form."). The Court relied on five of its previous opinions stating this principle and dating from 1959-2004. Id. 2011 OK 96 at n.10, 286 P.3d at 287. See also Kolosha v. State, 2017 OK 48, 397 P.3d 479, 480 ("meaning and effect of an instrument filed in court depends on its contents and substance rather than on the form or title").

19 A District Court may exercise unlimited original jurisdiction of all justiciable matters, except as otherwise provided by the Constitution. Jernigan v. Jernigan, 2006 OK 22, n. 16, 138 P.3d 539, 545, citing Okla. Const. Art. 7 § 7(a).

20 See, e.g., State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck, 1988 OK 38, 753 P.2d 1356, 1359 (a District Court sitting as magistrate in a criminal felony matter lacked jurisdiction to dispose of a seized truck by attempting to grant relief in the nature of an in rem civil jurisdiction forfeiture when based merely upon a criminal information charging the unlawful sale of marijuana).

21 Ricks Exploration v. Oklahoma Water Resources Board, 1984 OK 73, 695 P.2d 498, 502 ("In an individual proceeding issues are formed by the instruments filed by the parties or by the evidence adduced.").

22 See, e.g., State ex rel. Oklahoma State Dep't of Health v. Robertson, 2006 OK 99, ¶ 16, 152 P.3d 875, 880 (an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority); Farmacy LLC v. Kirkpatrick, 2017 OK 37, ¶ 20, 394 P.3d 1256, 1261 (an officer or agency has, by implication and in addition to the powers expressly given by statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers); Bryant-Hayward Drilling Co. v. Green, 1961 OK 127, 362 P.2d 676, 677 (administrative State Industrial Court has jurisdiction limited to matters expressly or by necessary implication delegated by statute).

23 See, e.g., Farmacy LLC v. Kirkpatrick, 2017 OK 37, 394 P.3d 1256 (Oklahoma Board of Veterinary Medical Examiners possessed no authority or power pursuant to the Oklahoma Veterinary Practice Act, 59 O.S.2011, § 698.1 et seq., to assess a $25,000 fine against Farmacy in an administrative proceeding, and the District Court's writ of prohibition against the Board granted in the administrative appeal was affirmed).

24 Strelecki v. Oklahoma Tax Commission,1993 OK 122, n. 49, 872 P.2d 910, 917.

25 State ex rel. Hart v. Parham, 1966 OK 9, 412 P.2d 142, 154 (The Court stated in a proceeding involving a party regulated by an administrative agency: "The due process clauses of the state and federal constitutions afford protection against arbitrary and unreasonable administrative action."); Lindsey v. State ex rel. Dept. of Corrections, 1979 OK 35, 593 P.2d 1088, 1092-1093 (same); Bowen v. State ex rel. Oklahoma Real Estate Appraiser Bd., 2011 OK 86, ¶ 15, 270 P.3d 133, 137-138 (When an administrative board acts in an adjudicative capacity, it functions much like a court, and such proceedings require a minimum standard of due process such as notice and an opportunity to be heard.).

26 Del City v. FOP, Lodge No. 114, 1993 OK 169, 869 P.2d 309, 312-313 (Constitution should be construed by officials to harmonize all of its provisions and the public duties of all officials), explaining Smartt v. Bd. of County Comm'rs, 1917 OK 590, 169 P. 1101, 1102. See, e.g., I.T.K. v. Mounds Public Schools, 2019 OK 59, ¶ 30, 451 P.3d 125, 140 (a public official exercises authority in a manner where neither public nor private rights will be injured or impaired).

27 Mustang Run Wind Project, LLC v. Osage County Bd. of Adjustment, 2016 OK 113, n. 9, 387 P.3d 333, 339 (Constitution must be construed as a consistent whole, in harmony with common sense and reason, with all pertinent portions of the Constitution being construed together). See, e.g., Torrres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 17, 373 P.3d 1057, 1066-1067 (a legislative enactment should be construed in a manner that avoids conflict with our Constitution).

28 Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, ¶ 10, 371 P.3d 477, 482 (fact-finding associated with interpretation and application of statutory authority consistent with a constitutional provision may obviate a need to adjudicate unconstitutionality of a statute or an official's conduct based upon that interpretation and application of the statutory authority consistent with constitutional principles).

29 Nonconformity of a statute to the Oklahoma Constitution may be either facial, or lie solely in the law's application, or both. See, e.g., Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, n. 23, & ¶ 12, 371 P.3d 477, 483 ([1] the Workers' Compensation Commission "finding a statute or regulation unconstitutional as applied to a specific party does not affect the facial validity of that provision," and [2] the legislature may not confer upon the Commission a power to determine the facial unconstitutionality of a statute, because such power resides in the judiciary alone); City of Stillwater v. Int'l Ass'n of Fire Fighters, 2010 OK 55, ¶ 12, 238 P.3d 926, 930 (Court explained it had held a statute did not, on its face, violate Okla. Const. Art. 10, § 26, but the potential existed for the statute to be unconstitutional as applied). Cf. United States v. Carel, 668 F.3d 1211, 1217 (10th Cir. 2011) ("An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both.").

30 Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality, 2002 OK 94, ¶ 9, ¶ 10, 61 P.3d 219, 223 (administrative process may be inadequate to fully and satisfactorily protect a constitutional right, and Administrative Procedures Act, 75 O.S.2001 § 306, allowed a District Court declaratory judgment action to test the applicability and validity of an agency rule), citing Dow Jones & Co. Inc. v. State ex rel. Oklahoma Tax Comm'n, 1990 OK 6, n. 9, 787 P.2d 843, 845 (two provisions of two tax statutes were unconstitutional in the context of an administrative appeal of a tax protest before the Tax Commission); Conoco, Inc. v. State Dept. of Health of State of Oklahoma, 1982 OK 94, 651 P.2d 125, 128--29 (party who failed to appeal a final administrative order could not later challenge the validity of the agency's rule on which the final order was issued by means of a District Court declaratory judgment proceeding).

31 See, e.g., Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd., 2007 OK 21, ¶ 7, 158 P.3d 461, 464--465 ("But one need not exhaust administrative remedies where, as here, 'the power of the agency to act at all under the statutory scheme it is charged with administering' is being challenged."); State ex rel. Okla. Dept. of Mines v. Jackson, 1997 OK 149, ¶ 12, 950 P.2d 306, 310 ("Because the sureties actions tender issues that are not cognizable by ODM the exhaustion-of-remedies doctrine is not invocable as a bar to their quests for declaratory relief."); Lone Star Helicopters, Inc. v. State, 1990 OK 111, 800 P.2d 235, 238 (the exhaustion-of-remedies doctrine was not invocable as a bar to the action for recovery of damages from breach of contract).

32 Apache Corp. v. State ex rel. Okla. Tax Comm'n, 2004 OK 48, ¶ 10, 98 P.3d 1061, 1064 (explaining exhaustion of administrative remedies is a prudential rule when exhaustion is not required by statute, and contrasting the prudential rule with the legislature making exhaustion mandatory by creating an exclusive statutory remedy).

33 See, e.g., Thomas v. Cumberland Operating Co., 1977 OK 164, ¶ 4, 569 P.2d 974, 976 (distinguishing a remedial or procedural statute which does not create, enlarge, diminish, or destroy vested substantive legal right). Cf. Clark v. Cassidy, 64 Haw. 74, 636 P.2d 1344, 1346-1347 (1981) (distinguishing between "substantive rights" and "remedies" or procedural laws which merely prescribe methods of enforcing or giving effect to existing rights).

34 We need not address in this appeal application of a prudential exhaustion-of-remedies doctrine when a party: (1) Fails to use an available District Court original jurisdiction remedy for adjudication of a constitutional claim with a preserved assignment of error in an appeal of a District Court judgment; and (2) Invokes administrative agency review and raises the constitutional claim for the first time in an appeal from an administrative decision. See note 48, infra.

35 Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, n. 28, 270 P.3d 113, 122; GRP of Texas, Inc. v. Eateries, Inc., 2001 OK 53, ¶ 8, 27 P.3d 95, 98; Grider v. USX Corp., 1993 OK 13, 847 P.2d 779, 786.

36 City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92, ¶12, 967 P.2d 1214, 1219 ("Except in certain cases of alleged irregularities in procedure before the agency--a situation not applicable here--the review is confined to the record made before the administrative tribunal."), citing 75 O.S.1991 § 321.

37 Ricks Exploration v. Oklahoma Water Resources Board, 1984 OK 73, 695 P.2d 498, 502 (issues adjudicated in an administrative appeal may not be broader than those before the agency).

38 Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n, 1988 OK 117, 764 P.2d 172, 180 (emphasis added). The Court in Ledbetter also addressed when the exhaustion is required by statute, and stated "a strong showing as to both inadequacy of the procedure and of impending harm must be made." Id. 764 P.2d at 181.

39 State of Oklahoma, ex rel. State Insurance Fund v. Great Plains Center, Inc., 2003 OK 79, n. 14 & ¶ 29, 78 P.3d 83, 92. See, e.g., Capshaw v. Gulf Ins. Co., 2005 OK 5, n. 36 & ¶ 13, 107 P.3d 595, 603 (party's failure to ask for a different verdict form was a waiver of error pertaining to the verdict form). Cf. Westinghouse Electric Corp. v. Grand River Dam Authority, 1986 OK 20, 720 P.2d 713 (party failed to utilize pre-judgment and post-judgment remedies which would have preserved error as well as the controversy, and party was unsuccessful on appeal when arguing public policy required an adjudication of the merits although controversy was moot).

40 In re M.K.T., 2016 OK 4, ¶ 61, 368 P.3d 771, 789 (rule stated).

41 Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 52, 473 P.3d 475, 497. See, e.g., Bottles v. State ex rel. Okla. State Bd. of Med. Licensure and Supervision, 1996 OK 59, 917 P.2d 471, 472 (Court will address on appeal only issues previously raised in lower tribunal, but public interest and due process claims are two exceptions); Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, ¶ 10, 371 P.3d 477, 482 (Court noted the benefit when the administrative process initially addressed a constitutional issue among other issues within the agency's purview and the result of fact-finding or interpretation and application of statutory processes obviating the need for an adjudication of a constitutional question.).

42 Markwell v. Whinery's Real Estate, Inc., 1994 OK 24, 869 P.2d 840, 842.

43 Markwell, 869 P.2d at 842.

44 See, e.g., White v. Adoption of Baby Boy D., 2000 OK 44, ¶¶ 41-42, 10 P.3d 212, 221 (appellate brief failed to distinguish between procedural and substantive due process, but Court could determine party raised issues relating to improper notice and an alleged failure of the trial court to properly balance party's liberty interests). Cf. Beets v. Metropolitan Life Insurance, 1999 OK 15, n. 7, 995 P.2d 1071, 1073 (when a brief cites a provision of the Oklahoma Constitution without additional authority or convincing argument, the assignment of error based solely upon the provision cited will not be considered unless it is apparent without further research that the assignment is correct.).

45 See, e.g., Nelson v. Nelson, 1998 OK 10, ¶ 15, 954 P.2d 1219, 1225 (party's brief raised procedural and substantive due process issues); Lee v. Bueno, 2016 OK 97, ¶ 38, 381 P.3d 736, 749 (Okla. Const. Art. 2 § 7 "contains an anti-discrimination component that affords protection against unreasonable or unreasoned classifications serving no important governmental objective"); Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 23, 373 P.3d 1057, 1069 ("the Oklahoma Due Process Section provides a bundle of rights").

46 O.R. at 273-311, 293, Defendant's Motion for Relief from Protective Order, etc.,

47 Brown v. Claims Management Resources Inc., 2017 OK 13, ¶ 27, 391 P.3d 311, 319-320 ("Because relief is available on alternative grounds, we need not reach the constitutional issues presented."); Board of County Comm'rs v. Lowery, 2006 OK 31, ¶ 14, 136 P.3d 639, 649 (when legal relief is available on alternative non-constitutional grounds, we usually avoid reaching a determination on the constitutional issue unless circumstances require additional analysis, e.g., when a statutory issue is necessarily intertwined with a constitutional issue).

48 51 O.S.2011 § 24A.17 (B)(1): "B. Any person denied access to records of a public body or public official: 1. May bring a civil suit for declarative or injunctive relief, or both, but such civil suit shall be limited to records requested and denied prior to filing of the civil suit."

See also City of Broken Arrow v. Bass Pro Outdoor World, L.L.C., 2011 OK 1, n. 12, 250 P.3d 305, 316 ("The Oklahoma Open Records Act provides a remedy in the form of a civil suit for declaratory and/or injunctive relief to a person denied access to a record of a public body or public official.").

Due to the appellate remedial relief granted herein, we need not discuss the District Court's 51 O.S. § 24.17 remedial relief in relation to an administrative procedure based upon the Board's assertion of continued jurisdiction to modify a protective discovery order. See note 34 supra.

49 Johnson v. CSAA General Ins. Co., 2020 OK 110, ¶ 33, 478 P.3d 422, 437; Broadway Clinic v. Liberty Mut. Ins. Co., 2008 OK 29, ¶ 26, 139 P.3d 873, 880.

50 The appeal herein was brought pursuant to 59 O.S.2011 § 513(A)(1) which invokes this Court's appellate cognizance of the Board's exercise of quasi-judicial disciplinary authority.

51 Oklahoma Administrative Procedures Act (OAPA), 75 O.S. 2011 §§ 250-323 (as amended).

52 See, e.g., State ex rel. Okla. Bd. of Med. Licensure & Supervision v. Pinaroc, 2002 OK 20, 46 P.3d 114 (discussion of final orders of the Medical Board appealed to the Oklahoma Supreme Court based upon 59 O.S.Supp.1998 § 513, and the application of the OAPA to the appeals).

53 Scott v. Okla. Secondary Sch. Activities Ass'n, 2013 OK 84, ¶ 26, 313 P.3d 891, 899.

54 Johnson v. CSAA General Ins. Co., 2020 OK 110, ¶ 9, 478 P.3d 422, 426 (factors recognized in an appeal from a District Court).

55 Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, ¶ 15, 392 P.3d 295, 303 (approved for publication by Supreme Court); American Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 25, 341 P.3d 56, 63 (agency's legal rulings are subject to an appellate court's plenary, independent and nondeferential reexamination with a de novo review).

56 Harrison v. Oklahoma Police Pension and Retirement System, 2020 OK 91, ¶ 2, 477 P.3d 383, 386, citing State ex rel. Protective Health Services State Dept. of Health v. Vaughn, 2009 OK 61, ¶ 9, 222 P.3d 1058, 1064.

57 Strong v. State, ex rel. Oklahoma Police Pension and Retirement Board, 2005 OK 45, n.1, 115 P.3d 889, 891; City of Hugo v. State ex rel. Public Employees Relations Bd., 1994 OK 134, 886 P.2d 485, 490.

58 State ex rel. Oklahoma State Dep't of Health v. Robertson, 2006 OK 99, ¶ 5, 152 P.3d 875, 877, citing State ex rel. Dept. of Transportation v. Little, 2004 OK 74, ¶ 10, 100 P.3d 707, 711.

59 O.R. 93-112 ("Defendant's Motion for Summary Judgment," Aug. 18, 2016).

60 O.R. at 113, page 1 of the Stipulated Protective Order.

61 Subchapter (1) General Information, Sunchapter (3) Contracts for Domestic Violence and Sexual Assault Services, Subchapter (5) Procedure in Individual Administrative Proceedings, and Subchapter (7) Certification and Designation of Domestic Violence Programs, Sexual Assault Programs, Including Programs Serving Adult Victims of Sex Trafficking, and Batterers Intervention Programs.

62 (1) 75-1-5-1 (Individual Proceedings); (2) 75-1-5-2 (Persons affected by individual actions); (3) 75-1-5-3 (Types of sanctions); (4) 75-1-5-4 (Petition and notice in individual proceedings); (5) 75-1-5-5 (Service of petition and notice); (6) 75-1-5-5.1 (Emergency actions); (7) 75-1-5-5.2 (Procedures in individual proceedings generally); (8) 75-1-5-5.3 (Prehearing Conference); (9) 75-1-5-5.4 (Continuances); (10) 75-1-5-5.5 (Discovery); (11) 75-1-5-6 (Protective Orders); (12) 75-1-5-7 (Subpoenas); (13) 75-1-5-8 (Conduct and record of hearing); (14) 75-1-5-9 (Hearing officers); (15) 75-1-5-10 (Order of hearing); (16) 75-1-5-11 (Order); and (17) 75-1-5-12 (Settlement).

63 Estes v. ConocoPhillips Co., 2008 OK 21, ¶ 10, 184 P.3d 518, 523-524 ("Administrative rules, like statutes, are to be given a sensible construction."). Cf. Schweigert v. Schweigert, 2015 OK 20, ¶15, 348 P.3d 696 (similar to construction of an administrative rule, when construing a rule for District Courts we use the plain meaning of the provision, and use a sensible construction which gives effect to unambiguous language).

64 O.A.C. 75:1-5-1. Individual proceedings.

Article II of the Administrative Procedures Act ("APA"), 75 O.S. § 308a, et seq., governs individual proceedings by Office of the Attorney General for revocation, denial, suspension and non-renewal of certification or for reprimand of certified facilities.

65 O.A.C. 75:1-5-2. Persons affected by individual actions.

The Attorney General may bring an individual proceeding against any program certified by the Attorney General for violation of Title 74 O.S § 18p-1 et seq. or the rules of the Attorney General as set forth in Title 75 of the Oklahoma Administrative Code.

66 O.A.C. 75:1-5-3. Types of sanctions.
The following administrative sanctions may be taken against a Respondent:

(1) Revocation of certification
(2) Reduction in certification
(3) Suspension of certification
(4) Reprimand

67 O.A.C. 75-1-5-6:
(a) The Attorney General or the Hearing Officer at the hearing or at anytime upon application of a party, with or without notice, may make such orders relating to discovery as may be necessary or appropriate for the protection of the parties, and to prevent hardship to and excessive burden upon a party. Such orders may, among other subjects, limit the scope of depositions, prohibit questions or subjects of inquiry, require or excuse answers to questions on deposition, limit or excuse, in whole or in part, production of documents and shorten or extend the time within which any act shall be performed. Disclosure of client identification shall only be ordered pursuant to state and federal law.

(b) The Attorney General or the Hearing Officer may make appropriate orders, including dismissal of a proceeding or denial of relief, as may be warranted for failure or refusal to comply with an order issued pursuant to this rule.

68 The twelfth provision, 75-1-5-7, "Subpoenas," provides for the Attorney General ruling on a motion to quash a subpoena. 75-1-5-7(c). The thirteenth provision, 75-1-5-8, "Conduct and record of hearing," refers to "every hearing before the Office of the Attorney General." The fourteenth provision, 75-1-5-9, "Hearing officers," states: "The Attorney General shall appoint at least one individual who is a licensed attorney to act as the Administrative Hearing Officer in individual proceedings filed before the Office of the Attorney General." The fifteenth provision, 75-1-5-10, "Order of hearing," refers to the hearing specified in 75-1-5-9. The sixteenth provision, 75-1-5-11 "Order," refers to "the Attorney General shall issue an order sustaining the allegations." The seventeenth provision, 75-1-5-12, "Settlement," provides for a settlement of an individual proceeding "with the concurrence of the Office of the Attorney General."

69 2019 Okla. Sess. Law, c. 492 § 9 (eff. Nov. 1, 2019, pursuant to Ch. 492 § 13).

70 Section 509.1 is divided into paragraphs designated "A. Range of Actions," "B. Letter of Concern," "C. Examination/Evaluation," "D. Disciplinary Actions Against Licensees," "E. Surrender in Lieu of Prosecution," and "F. All Licensed Professionals."

71 State ex rel. Okla. Bar Ass'n v. Besly, 2006 OK 18, ¶¶ 9, 29, 34--35, 136 P.3d 590, 596, 600--601, 602--603 (stipulation could not support a violation on a date when the Oklahoma Rules of Professional Conduct were not in effect); State ex rel. Oklahoma Bar Ass'n v. Flanery, 1993 OK 97, 863 P.2d 1146, 1148 (whether a lawyer was charged with violating Rules of Professional Conduct or the former Code of Professional Responsibility was based upon which one was in effect on the date of the misconduct). Cf. Dolese Bros. Co. v. State ex rel. Okla. Tax Commission, 2003 OK 4, ¶ 9, 64 P.3d 1093, 1098 (substantive rules are applied to conduct in effect when conduct occurred and not retroactively). Because of our analysis herein, we also need not discuss differences in a retroactivity analysis, if any, between a statute defining proscribed conduct and one defining the authority of a board to impose discipline upon a finding of proscribed conduct.

72 Saxon v. Macy, 1990 OK 60, n. 2, 795 P.2d 101, 102, citing Wickham v. Gulf Oil Corp., 1981 OK 8, 623 P.2d 613, 615.

73 Estes v. ConocoPhillips Co., 2008 OK 21, ¶ 10, 184 P.3d 518, 523 ("Administrative rules are valid expressions of lawmaking powers having the force and effect of law.").

74 O.A.C. 435:1-1-3 was last amended in May 1998, and O.A.C. 435:3-3-2 was last added in May 1995.

75 O.A.C. 435:1-1-10. Duties of the Secretary/Medical Advisor, states in part: "(a) The Secretary/Medical Advisor of the Board is hereby hired to perform duties to include, but not be limited to, the following: . . . (2) Function on behalf of the Board and represent the Board in all matters in the interim period between Board meetings."

76 435:3-3-13. Trial examiner, states in part: "(a) The Board or the Board Secretary may direct that the Board utilize a Trial Examiner to hear matters specified by the Secretary or as authorized by this Chapter. Generally, where the Trial Examiner is requested, the duties of the Trial Examiner in an individual proceeding shall be: . . . (5) to hear and rule on other preliminary motions."

77 Board's answer brief at page 13.

78 O.A.C. 435:5-1-5. Letters of concern.

"The Secretary is hereby authorized, in the exercise of sound discretion, to issue a letter of concern to a physician whose conduct does not warrant formal disciplinary action by the Board, but whose action does warrant a letter of concern to apprise the physician of a potential for further action by the Board. Letters of concern shall remain in the confidential investigative file of the physician to whom the letter is issued."

79 O.A.C. 435:3-3-4. Complaints.

"(a) An individual proceeding, whether initiated by the Board or by a citizen complainant shall be initiated by the filing of a sworn complaint with the Secretary of the Board. The complaint shall contain a brief statement setting forth the allegations which are the basis of the complaint and naming the person against whom the complaint is made. The complaint shall set forth all notice and hearing requirements of the APA.
(b) After a complaint has been filed in accordance with (a) of this section, the Secretary of the Board shall review the complaint and may issue a citation notifying the person named in the complaint of said filing and the date and place of the hearing.
(c) The decision whether to issue a citation shall be left to the discretion of the Secretary."

80 O.A.C. 435:3-3-4 at note 79, supra.

81 O.A.C. 435:3-1-2. Definitions.

"Complaint" means a written or oral statement of alleged violation of the Act by a person licensed or certified by the Board and which is filed with the Secretary in anticipation of a citation. This definition is distinct from "citizen complaint," which refers to a written or oral statement of violation of the Act prior to investigation by the Staff and submission to the Secretary.

82 State ex rel. Oklahoma Bd. of Medical Licensure and Supervision v. Pinaroc, 2002 OK 20, ¶ 1, ¶ 10, 46 P.3d 114, 116, 118 ("The State Board of Medical Licensure and Supervision is subject to the provisions of the Oklahoma Administrative Procedures Act, 75 O.S.1991 §§ 250.1--323, as amended"), relying on two previous opinions, and 75 O.S.Supp.1992 § 250.3 (definition of "agency"); 59 O.S.Supp.1998 § 481 (statutory recreation of State Board of Medical Licensure and Supervision).

83 See, e.g., 59 O.S.Supp.2018 § 567.8(D) (In 2019 the legislature amended the statute to expressly state information obtained during an investigation of misconduct is confidential, but upon being introduced in an administrative individual proceeding before the Oklahoma Board of Nursing the information becomes an administrative public record.); 2019 Okla. Sess. Law, c. 203, § 2 (eff. Nov. 1, 2019).

Although not occurring in a quasi-judicial context, attorney discipline occurs in the public's view where the formal disciplinary complaint and "all further filings and proceedings" with respect to that complaint "shall be a matter of public record." State ex rel. Okla. Bar Ass'n v. Bednar, 2019 OK 12, n. 4 & ¶ 20, 441 P.3d 91, 98, citing Rules Governing Disciplinary Proceedings, Rule 6.1, 5 O.S.2011, ch. 1, app. 1-A.

84 See, e.g., Christian v. Gray, 2003 OK 10, ¶ 45, 65 P.3d 591, 609 ("When we speak of the discretion of the trial judge we do not mean that the decision of the trial judge is one without fixed principles by which its correctness may be determined upon appellate review.").

85 Inhofe v. Wiseman, 1989 OK 41, 772 P.2d 389, 391 (mandamus or prohibition may issue to correct a District Court's order which is contrary to authority or an abuse of discretion).

86 Oklahoma Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119, ¶ 15, 390 P.3d 689, 694

87 51 O.S.Supp.2014 § 24A.30:

All court records, as defined by Section 32.1 of Title 12 of the Oklahoma Statutes, shall be considered public records and shall be subject to the provisions of the Oklahoma Open Records Act, unless otherwise identified by statute to be confidential. If confidentiality is not required by statute, the court may seal a record or portion of a record only if a compelling privacy interest exists which outweighs the public's interest in the record. In all cases where the court is sealing a record or portion of a record, the court shall enter an order which shall be public and shall:

1. Make findings of fact which identify the facts which the court relied upon in entering its order;
2. Make conclusions of law specific enough so that the public is aware of the legal basis for the sealing of the record;
3. Utilize the least restrictive means for achieving confidentiality; and
4. Be narrowly tailored so that only the portions of the record subject to confidentiality are sealed and the remainder of the record is kept open.

88 See, e.g., Oklahoma Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119, ¶ 15, 390 P.3d 689, 694 (strong public policy for access to public records); 51 O.S.Supp.2014 § 24A.30 (stating court records are public records and providing a procedure for when a privacy interest outweighs the public's interest).

89 75 O.S.2011 § 309(D):

D. Deliberations by administrative heads, hearing examiners, and other persons authorized by law may be held in executive session pursuant to paragraph 8 of subsection B of Section 307 of Title 25 of the Oklahoma Statutes.

90 Tucker v. Cochran Firm-Criminal Def. Birmingham L.L.C., 2014 OK 112, ¶ 33, 341 P.3d 673, 686-87.

91 O.A.C. 435:3-3-9. Discovery.

When time permits prior to a hearing, parties to the hearing shall be allowed to use discovery available in a civil action in the District Courts of Oklahoma. The failure of a party to have sufficient time to exercise any discovery mechanism on account of a lack of time shall not of itself constitute good cause for the granting of a continuance of a hearing.

92 12 O.S.2011 § 3224 states in part that: "Sections 3224 through 3237 of this title shall be known and may be cited as the Oklahoma Discovery Code."

93 12 O.S.Supp.2017 § 3226(C) ("Protective Orders"); YWCA of Okla. City v. Melson, 1997 OK 81, ¶ 15, 944 P.2d 304, 308-09 (discussing discovery limitation in 12 O.S. § 3226(C) and stating that in order to prevent unauthorized disclosure from taking place, a protective order pursuant to 12 O.S. § 3226 may be granted, which could limit or disallow the discovery, or place some documents under seal).

94 12 O.S.2011 § 3229:

Unless the court orders otherwise, the parties may by written stipulation:

1. Provide that depositions may be taken before any person, at any time or place, upon any notice, and in any manner and when so taken may be used like other depositions; and

2. Modify other procedures governing or limitations placed upon discovery, except that stipulations extending the time provided in Sections 3226, 3233, 3234 and 3236 of this title for responses to discovery may, if they would interfere with any time set for completion of discovery, be made only with the approval of the court. A person designated by the stipulation has the power by virtue of his designation to administer any necessary oath.

95 United Nuclear Corp. v. Cranford, 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied sub nom. Am.Special Risk Ins. Co. v. Rohm & Haas Co., 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

96 Nielsen Co. (U.S.), LLC v. Success Sys., Inc., 112 F. SupP.3d 83, 120 (S.D.N.Y. 2015).

97 In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009).

98 F.R.C.P. Rule 29:

Unless the court orders otherwise, the parties may stipulate that:
(a) a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified--in which event it may be used in the same way as any other deposition; and
(b) other procedures governing or limiting discovery be modified--but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial.

99 Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., 121 F.R.D. 264 (M.D.N.C.1988) (a court will consider granting relief from an improvident agreement, especially when the agreement is inconsistent with public policy), citing In re Westinghouse Elec. Corp., etc., 570 F.2d 899, 902 (10th Cir.1978).

100 Hernandez v. Mario's Auto Sales, Inc., 617 F. SupP.2d 488, 492-493 (S.D. Tex. 2009) (party seeking to modify a scheduling order deadline must show that, despite acting diligently, it will still be unable to meet that deadline, and mere stipulations by the parties do not constitute good cause).

101 Brigham Young Univ. v. Pfizer, Inc., 281 F.R.D. 507, n. 14, 510 (D.Utah 2012), citing United Nuclear, 905 F.2d at 1426.

102 Brigham Young Univ., 281 F.R.D. at 510 (citing SmithKline Beecham Corp. v. Synthon Pharm. Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002)).

103 Pub. Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir.1988), cert. denied sub nom. Liggett Group, Inc. v. Pub. Citizen, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); see also Beckman Indus., Inc. v. Intern. Ins. Co., 966 F.2d 470, 476 (9th Cir.), cert. denied sub nom, Intern. Ins. Co. v. Bridgestone/Firestone, Inc., 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992) (the parties stipulated to a blanket protective order, and reliance will be less with a blanket order because it is by nature overinclusive).

104 New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C., 429 F. SupP.3d 996, 1007 (D.N.M. 2019); see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 622 n. 2 (10th Cir. 1982) (a motion under Fed.R.Civ.P. 26(c) for protection from a subpoena is timely filed if made before the date set for production) citing United States v. IBM Corp., 70 F.R.D. 700, 701 (S.D.N.Y. 1976).

105 SEC v. Merrill Scott & Assoc., Ltd., 600 F.3d 1262, 1272-1273 (10th Cir. 2010).

106 Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc., 332 F.R.D. 159, 160-61 (E.D. Pa. 2019).

107 Id. at 160 (citing Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-91 (3d Cir. 1994)).

108 Brigham Young Univ. v. Pfizer, Inc., 281 F.R.D. 507, 511 (D. Utah 2012) (stating Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2nd Cir. 2006) "recently held that contested documents 'by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment' are judicial documents under the common law and there is also a 'qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion.'").

109 United States v. ITT Cont. Baking Co., 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 43 L.Ed.2d 948 (1975) ("Consent decrees and orders have attributes both of contracts and of judicial decrees or, in this case, administrative orders . . . . Because of this dual character, consent decrees are treated as contracts for some purposes but not for others."); see, e.g., In re Peck, 155 B.R. 301, 309 (Bankr. D. Conn. 1993) ("Like a consent decree, the Stipulated Order retained the attributes of a contract for the purpose of construction, and assumed the attributes of an order for the purpose of enforcement.").

110 In re Guardianship of Berry, 2014 OK 56, ¶ 89, 335 P.3d 779, 807-08; Chandler U.S.A., Inc. v. Tyree, 2004 OK 16, ¶ 33, 87 P.3d 598, 606; YWCA of Okla. City v. Melson, 1997 OK 81, n. 41, 944 P.2d 304, 311.

111 Johnson v. Bd. of Governors of Registered Dentists, 1996 OK 41, 913 P.2d 1339, 1345 (concept applied to a dentist).

112 See, e.g., State ex rel. Dep't of Transp. v. Little, 2004 OK 74, ¶ 24, 100 P.3d 707, 719 ("A final adjudicative administrative decision may have the same preclusive effect as the judgment of a court provided that the proceeding in which the administrative decision is made meets the standards for preclusive effect applicable to judicial decisions.").

113 The parties' briefs and our appellate disposition do not require an analysis of circumstances involving a lack of uniformity between judicial and administrative remedies.

114 51 O.S.2011 § 24A.25.

115 Section 3226(C)(2) - (7) contains the following.

2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,
b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and
c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order.
This requirement may also be satisfied by requiring the party to file the documents pursuant to the procedure for electronically filing sealed or confidential documents approved for electronic filing in the courts of this state.
3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion.
4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action.
5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case.
6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order.
7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

116 Shadid v. Hammond, 2013 OK 103, ¶ 2, 315 P.3d 1008, 1009 (Taylor J., joined by Kauger, J., concurring) ("There are no provisions in the Oklahoma Open Records Act that allow parties to simply agree to seal a public record and submit a summary agreed order to the court."); Shadid, 2013 OK 103, ¶ 7, 315 P.3d 1011-12 (Edmondson, J., joined by Colbert, C.J., concurring in part and dissenting in part) (an order of the court for removal of material from the public record requires compliance with 51 O.S. § 24A.25 and 12 O.S. § 3226).

117 Shawareb v. SSM Health Care of Oklahoma, Inc., 2020 OK 92, ¶ 20, 480 P.3d 894, 903.

118 Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (historically, pretrial depositions and interrogatories were not treated as open to the public at common law, and generally, in modern practice they have been conducted in private) (citing Gannett Co. v. DePasquale, 443 U.S. 368, 389, 99 S.Ct. 2898, 2910, 61 L.Ed.2d 608 (1979)).

119 See, e.g., In re Estate of Whitlock, 1988 OK 10, 754 P.2d 862 (deposition testimony on file in the office of the trial court's clerk may or may not be part of the evidence in a case based upon whether it was admitted or properly excluded).

120 51 O.S.Supp. 2014 § 24A.30, states in part: "All court records, as defined by Section 32.1 of Title 12 of the Oklahoma Statutes, shall be considered public records and shall be subject to the provisions of the Oklahoma Open Records Act, unless otherwise identified by statute to be confidential."

121 12 O.S.2011 § 32.1, states in part: "Evidence must not be recorded."

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Civil Appeals Cases
 CiteNameLevel

 2017 OK CIV APP 16, 392 P.3d 295, DOBSON TELEPHONE CO. v. STATE ex rel. OKLA. CORPORATION COMM.Discussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1988 OK 10, 754 P.2d 862, 59 OBJ 332, Estate of Whitlock, In reDiscussed
 1988 OK 38, 753 P.2d 1356, 59 OBJ 1081, State ex rel. Turpen v. A 1977 Chevrolet Pickup TruckDiscussed
 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'nDiscussed
 1989 OK 41, 772 P.2d 389, 60 OBJ 675, Inhofe v. WisemanDiscussed
 1998 OK 10, 954 P.2d 1219, 69 OBJ 452, NELSON v. NELSONDiscussed
 1990 OK 6, 787 P.2d 843, Dow Jones & Co., Inc. v. State ex rel. Oklahoma Tax Com'nDiscussed
 1990 OK 60, 795 P.2d 101, 61 OBJ 1853, Saxon v. MacyDiscussed
 1990 OK 111, 800 P.2d 235, 61 OBJ 2893, Lone Star Helicopters, Inc. v. StateDiscussed
 1993 OK 13, 847 P.2d 779, 64 OBJ 597, Grider v. USX Corp.Discussed
 1993 OK 97, 863 P.2d 1146, State ex rel. Oklahoma Bar Ass'n v. FlaneryDiscussed
 1993 OK 122, 872 P.2d 910, 64 OBJ 2885, Strelecki v. Oklahoma Tax Com'nDiscussed
 1993 OK 169, 869 P.2d 309, 65 OBJ 44, City of Del City v. Fraternal Order of Police, Lodge No. 114Discussed
 1994 OK 24, 869 P.2d 840, 65 OBJ 795, Markwell v. Whinery's Real Estate, Inc.Discussed
 1994 OK 134, 886 P.2d 485, 65 OBJ 4025, City of Hugo v. State ex rel. Public Employees Relations Bd.Discussed
 1997 OK 81, 944 P.2d 304, 68 OBJ 2224, YWCA OF OKLAHOMA CITY v. MELSONDiscussed at Length
 2001 OK 53, 27 P.3d 95, 72 OBJ 1938, GRP OF TEXAS, INC v. EATERIES, INC.Discussed
 1917 OK 590, 169 P. 1101, 67 Okla. 141, SMARTT v. BOARD OF COUNTY COM'RS OF CRAIG COUNTYDiscussed
 1961 OK 127, 362 P.2d 676, BRYANT-HAYWARD DRILLING COMPANY v. GREENDiscussed
 2002 OK 20, 46 P.3d 114, 73 OBJ 907, STATE EX. REL. OKLAHOMA BD. OF MEDICAL LICENSURE & SUPERVISION v. PINAROCDiscussed at Length
 1966 OK 9, 412 P.2d 142, STATE v. PARHAMDiscussed
 2002 OK 94, 61 P.3d 219, WASTE CONNECTIONS, INC. v. OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITYDiscussed
 2003 OK 4, 64 P.3d 1093, DOLESE BROS. CO. v. STATE EX REL. OKLAHOMA TAX COMM.Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAYDiscussed
 2003 OK 79, 78 P.3d 83, STATE ex rel. STATE INSURANCE FUND v. GREAT PLAINS CARE CENTER, INC.Discussed
 2004 OK 16, 87 P.3d 598, CHANDLER (U.S.A.), INC. v. TYREEDiscussed
 2004 OK 48, 98 P.3d 1061, APACHE CORP. v. STATE ex rel. OKLAHOMA TAX COMMISSIONDiscussed
 2004 OK 74, 100 P.3d 707, STATE ex rel. DEPT OF TRANSPORTATION v. LITTLEDiscussed at Length
 2005 OK 5, 107 P.3d 595, CAPSHAW v. GULF INSURANCE COMPANYDiscussed
 2005 OK 45, 115 P.3d 889, IN THE MATTER OF STRONGDiscussed
 2006 OK 18, 136 P.3d 590, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BESLYDiscussed
 2006 OK 22, 138 P.3d 539, JERNIGAN v. JERNIGANDiscussed
 2006 OK 31, 136 P.3d 639, BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY v. LOWERYDiscussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.Cited
 1996 OK 41, 913 P.2d 1339, 67 OBJ 1027, Johnson v. Bd. Of Gov. of Registered DentistsDiscussed
 1996 OK 59, 917 P.2d 471, 67 OBJ 1598, Bottles v. State ex rel. Okla. State Bd. of Medical LicensureDiscussed
 2006 OK 99, 152 P.3d 875, STATE ex rel. OKLA. STATE DEPT. OF HEALTH v. ROBERTSONDiscussed at Length
 2007 OK 21, 158 P.3d 461, OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.Discussed
 2008 OK 21, 184 P.3d 518, ESTES v. CONOCOPHILLIPS CO.Discussed at Length
 2008 OK 29, 198 P.3d 877, BIERMAN v. ARAMARK REFRESHMENT SERVICES, INC.Cited
 2009 OK 61, 222 P.3d 1058, STATE ex rel. PROTECTIVE HEALTH SERVICES STATE DEPT. OF HEALTH v. VAUGHNDiscussed
 2010 OK 55, 238 P.3d 926, CITY OF STILLWATER v. INTERNATIONAL ASSOCIATION OF FIRE FIGHTERSDiscussed
 2011 OK 1, 250 P.3d 305, CITY OF BROKEN ARROW v. BASS PRO OUTDOOR WORLD, L.L.C.Discussed
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSADiscussed
 2011 OK 86, 270 P.3d 133, BOWEN v. STATE ex rel. OKLAHOMA REAL ESTATE APPRAISER BOARDDiscussed
 2011 OK 96, 286 P.3d 283, IN THE MATTER OF THE ESTATE OF DICKSIONDiscussed at Length
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELDDiscussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATIONDiscussed
 2013 OK 103, 315 P.3d 1008, SHADID v. HAMMONDDiscussed at Length
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRYDiscussed
 2014 OK 95, 341 P.3d 56, AMERICAN AIRLINES, INC. v. STATE ex rel. OKLAHOMA TAX COMMISSIONDiscussed
 2014 OK 112, 341 P.3d 673, TUCKER v. THE COCHRAN FIRM-CRIMINAL DEFENSE BIRMINGHAM L.L.C.Discussed
 2015 OK 20, 348 P.3d 696, SCHWEIGERT v. SCHWEIGERTDiscussed
 1977 OK 164, 569 P.2d 974, THOMAS v. CUMBERLAND OPERATING CO.Discussed
 2015 OK 51, 353 P.3d 532, DUTTON v. CITY OF MIDWEST CITYDiscussed
 2016 OK 4, 368 P.3d 771, IN THE MATTER OF M.K.T.Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLCDiscussed at Length
 2016 OK 42, 371 P.3d 477, ROBINSON v. FAIRVIEW FELLOWSHIP HOME FOR SENIOR CITIZENS, INC.Discussed at Length
 2016 OK 97, 381 P.3d 736, LEE v. BUENODiscussed
 2016 OK 113, 387 P.3d 333, MUSTANG RUN WIND PROJECT, LLC v. OSAGE COUNTY BD. OF ADJUSTMENTDiscussed
 2016 OK 119, 390 P.3d 689, OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMANDiscussed at Length
 2017 OK 13, 391 P.3d 111, BROWN v. CLAIMS MANAGEMENT RESOURCES INC.Cited
 1979 OK 35, 593 P.2d 1088, LINDSEY v. STATE EX REL. DEPT. OF CORR.Discussed
 2017 OK 37, 394 P.3 1256, FARMACY, LLC v. KIRKPATRICKDiscussed
 2017 OK 48, 397 P.3d 479, KOLOSHA v. STATEDiscussed
 2019 OK 12, 441 P.3d 91, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BEDNARDiscussed
 2019 OK 59, 451 P.3d 125, I. T. K. v. MOUNDS PUBLIC SCHOOLSDiscussed
 2020 OK 56, 473 P.3d 475, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTERDiscussed
 2020 OK 91, 477 P.3d 383, HARRISON v. OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEMDiscussed
 2020 OK 92, 480 P.3d 894, SHAWAREB v. SSM HEALTH CARE OF OKLAHOMADiscussed at Length
 2020 OK 110, 478 P.3d 422, JOHNSON v. CSAA GENERAL INSURANCE CO.Discussed at Length
 2000 OK 44, 10 P.3d 212, 71 OBJ 1583, WHITE v. ADOPTION OF BABY BOY D.Discussed
 1981 OK 8, 623 P.2d 613, Wickham v. Gulf Oil Corp.Discussed
 1981 OK 112, 641 P.2d 1106, Union Oil Co. of California v. BrownDiscussed
 1997 OK 149, 950 P.2d 306, 68 OBJ 4019, STATE ex rel. OKLAHOMA DEPT. OF MINES v. JACKSONDiscussed
 1982 OK 94, 651 P.2d 125, Conoco, Inc. v. State Dept. of HealthDiscussed
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations BoardDiscussed
 1998 OK 90, 968 P.2d 345, 69 OBJ 3237, Krosmico v. PettitDiscussed
 1999 OK 15, 995 P.2d 1071, 70 OBJ 774, Beets v. Metropolitan Life Insurance Co.Discussed
 1984 OK 73, 695 P.2d 498, Ricks Exploration Co. v. Oklahoma Water Resources Bd.Discussed at Length
 1986 OK 20, 720 P.2d 713, 57 OBJ 1155, Westinghouse Elec. Corp. v. Grand River Dam AuthorityDiscussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 2503, Physician- and Psychotherapist-Patient PrivilegeCited
 12 O.S. 3226, General Provisions Governing DiscoveryDiscussed at Length
 12 O.S. 32.1, Contents of RecordDiscussed
 12 O.S. 3224, Short Title and Scope of CodeDiscussed
 12 O.S. 3229, Stipulations Regarding Discovery ProcedureDiscussed at Length
Title 51. Officers
 CiteNameLevel

 51 O.S. 24A.25, Removal of Materials from the Public RecordDiscussed
 51 O.S. 24A.30, Court Records - Authority of the Court to Seal a RecordDiscussed at Length
 51 O.S. 24A.1, Short TitleDiscussed at Length
 51 O.S. 24A.12, Confidential Litigation Files and Investigatory ReportsCited
 51 O.S. 24A.17, Violations of Oklahoma Open Records Act - Civil LiabilityCited
 51 O.S. 24A.20, Access to Records in Possession of Public Body or Official for Investigatory PurposesDiscussed
Title 59. Professions and Occupations
 CiteNameLevel

 59 O.S. 481, Re-creation of State Board of Medical Licensure and SupervisionCited
 59 O.S. 567.8, Denial, Revocation or Suspension of Licensure - Grounds - Charges, Investigations and Hearings - Reinstatement - AppealCited
 59 O.S. 509.1, Range of Actions - Letter of Concern - Examination/Evaluation - Disciplinary Action Against Licensees - Surrender in Lieu of ProsecutionDiscussed
 59 O.S. 513, Quasi-Judicial Powers of BoardDiscussed at Length
 59 O.S. 698.1, Short TitleCited
Title 75. Statutes and Reports
 CiteNameLevel

 75 O.S. 250.1, Composition of Administrative Procedures ActCited
 75 O.S. 250.3, DefinitionsCited
 75 O.S. 306, Validity or Applicability of Rules - Action - Parties - Presumption of Validity - Burden Of Proof When Rule Appealed - Declaratory JudgmentCited
 75 O.S. 308a, Governing ProvisionsCited
 75 O.S. 309, Individual Proceedings - Notice - HearingDiscussed at Length
 75 O.S. 310, Procedures Before AgencyCited
 75 O.S. 318, Judicial ReviewCited
 75 O.S. 321, Review Without Jury - Additional Testimony.Cited
 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - AffirmanceDiscussed at Length
Title 76. Torts
 CiteNameLevel

 76 O.S. 26, Persons Supplying Information in Good Faith - LiabilityDiscussed at Length

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA